UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KINGBORN MORRIS, RAFAEL MATEO, and
DARNELL PIERRE, individually and on behalf of
all other persons similarly situated who were
employed by ALLE PROCESSING CORP.,
SCHREIBER PROCESSING CORP., ALBERT
WEINSTOCK, EDWIN WEINSTOCK, SAM
HOLLANDER and MENDEL WEINSTOCK,

                                    Plaintiffs,

              -against-

ALLE PROCESSING CORP., SCHREIBER
PROCESSING CORP., ALBERT WEINSTOCK,
EDWIN WEINSTOCK, SAM HOLLANDER and
MENDEL WEINSTOCK,

                                    Defendants.

Docket No: 08-CV-4874 (SLT)(JMA)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND NOTICE TO THE CLASS

Lloyd Ambinder, Esq.
LaDonna Lusher, Esq.
VIRGINIA & AMBINDER, LLP
111 Broadway, Suite 1403
New York, New York 10006
Tel: (212) 943 – 9080
Fax: (212) 943 – 9082
www.vandallp.com

## TABLE OF CONTENTS

**PAGE**

Table of Authorities ..................................................................................................................... iii

I. PRELIMINARY STATEMENT ................................................................................. 1

II. STATEMENT OF FACTS ......................................................................................... 1

III. ARGUMENT ............................................................................................................. 7

    A. THIS COURT SHOULD CERTIFY THIS ACTION
    AS A CLASS ACTION PURSUANT TO RULE 23 ........................................ 7

    B. RULE 23 IS TO BE LIBERALLY CONSTRUED ...................................... 7

    C. THIS CLASS ACTION SATISFIES ALL OF RULE 23's REQUIREMENTS ......... 8

    (1) The Class Is So Numerous That Joinder Of All Members is Impracticable ................. 9

    (2) Commonality -- The Claims of Each Member of the Putative Class Arise
    from a Common Wrong .................................................................................... 10

    (3) Predominance .............................................................................................. 14

    (4) The Named Plaintiffs' Claims Are Typical Of the Claims
    of the Putative Class ........................................................................................ 15

    (5) The Named Plaintiffs Will Fairly and Adequately
    Protect the Interests of the Class ...................................................................... 17

    6) Class Action Is Superior to Other Available Methods ................................. 19

    D. APPLICABLE CASE LAW SUPPORTS THE CONCLUSION THAT THIS
    COLLECTIVE AND CLASS ACTION SHOULD BE CERTIFIED ............................. 22

IV. CONCLUSION ......................................................................................................... 23

## TABLE OF AUTHORITIES

**PAGE**

**Federal Cases**

*In re Agent Orange Prod. Liab. Litig.*, 100 F.R.D. 718 (E.D.N.Y. 1983) ..................................... 20

*In re AM Int'l, Inc. Securities Litigation*, 108 F.R.D. 190, 196 (S.D.N.Y. 1985) … …….……..12

*Ansoumana v. Gristede's Oper. Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ..............................8, 9, 22

*Arch v. American Tobacco Co.*, 175 F.R.D. 469, 477 (E.D. Pa. 1997) ……… ……………….11

*In re Asbestos Sch. Litig.*, 104 F.R.D. 427 (E.D.Pa. 1984)..........................................................20

*Barone v. Safway Steel Products, Inc.*, 2005 WL 2009882 (E.D.N.Y. 2005) …..…….……...18, 22

*Bonett v. Educ. Debt Servs.*, 2003 U.S. Dist. LEXIS 9757 (E.D. Pa. May 9, 2003) … ...............14

*Brunson v. City of New York*, 2000 WL 1876910 (S.D.N.Y. 2000) …..….……….…...................19

*Brzychnalski v. Unesco, Inc.*, 35 F. Supp. 2d 351 (S.D.N.Y. 1999) ...................................8, 19, 22

*Cohen v. Uniroyal*, 77 F.R.D. 685, 691 (E.D. Pa. 1977) ..............................................................12

*Diaz v. Scores Holding Co.*, 2008 U.S. Dist. LEXIS 38248 (S.D.N.Y. May 9, 2008) ...................7

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y. 1981) ...............................16

*Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir. N.Y. 1968) ...............................................16

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) ……………………….......................…. 16

*Espinoza v. 953 Associates LLC*, 2011 U.S. Dist. LEXIS 132098 (S.D.N.Y. Nov. 16, 2011) ......9

*Fischer v. Plessey Co. Ltd.*, 103 F.R.D. 150 (S.D.N.Y. 1984) ......................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29 (2d. Cir. 2009....................................16

*Flores v. Anjost Corp.*, 2012 U.S. Dist. LEXIS 85171 (S.D.N.Y. June 19, 2012 ...........................9

*In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 734-35 (N.D. Ill. 1977)......................14

*German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537 (S.D.N.Y. 1995).................11

*Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 361 (E.D.N.Y. 2009)* ...............................................9

*Gortat v. Capala Bros., Inc., 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. 2010)* .........................15, 22

*Guzman v. VLM, Inc., 2008 U.S. Dist. LEXIS 15821* (E.D.N.Y. March 2, 2008).........8, 18, 21, 22

*Hedges Enterprises, Inc. v. Continental Group, Inc.*, 81 F.R.D. 461 (E.D. Pa. 1979).................20

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)..............................8, 22

*Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484 (N.D. Ill. 1969)................................14

*Katz v. Carte Blanche Corp.*, 496 F.2d 747 (3d Cir.), *cert. denied*, 419 U.S. 885 (1974) ............19

*Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283 (3d Cir. 1998) .................................................16

*Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997) ....................................................................11

*Neal v. Casey, 43 F.3d 48 (3d Cir. Pa. 1994*..............................................................................11

*Noble v. 93 Univ. Pl. Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004) ....................................................21

*Perez v. AC Roosevelt Food Corp.*,10-cv-4824, May 3, 2011 Order by Judge Gleeson...............18

*Philadelphia v. American Oil Co.*, 53 F.R.D. 45 (D.N.J. 1971)....................................................14

*Phila. Elec. Co. v. Anaconda Am. Brass & Co.*, 43 F.R.D. 452 (E.D. Pa 1968) ...........................14

*Piper v. Portnoff Law Assocs.*, 216 F.R.D. 325 (E.D. Pa. 2003) .............................................10, 16

*Poplawski v. Metroplex on the Atlantic, LLC*, 2012 U.S. Dist. LEXIS 46408
(E.D.N.Y. Apr. 2, 2012)      ……………………….…………………………………..…………7,   18

*Pruitt v. Allied Chem. Corp.*, 85 F.R.D. 100 (E.D. Va. 1980) ......................................................14

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir 1993) ..........................................................................10

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001) ...............................16

*Samuel-Bassett v. Kia Motors Am., Inc.*, 212 F.R.D. 271 (E.D. Pa. 2002) ….……........……...17

*Salim Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234 (2d Cir. N.Y. 2011)......8

*Savino v. Computer Credit, Inc.*, 164 F.3d 81 (2d Cir. 1998) ….…………………….........…......18

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) …………………………………………....11

*Velez v. Majik Cleaning Service, Inc.*, 2005 WL 106895 (S.D.N.Y. 2005) ........................8, 18, 22

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011). ......................................................9

*Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984) *cert. denied* 470 U.S. 1060 (1985) ............16

*Yanda v. Vanguard Meter Serv., Inc.*, 92 Civ. 2827 (S.D.N.Y. 1995) ………… ……………...22

*Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397 (D.N.J. 1990) …..……… ..……………16

## State Cases

*Dabrowski v Abax Inc.*, 84 A.D.3d 633 (N.Y. App. Div. 1st Dep't 2011)…………………………18

*Pesantez v. Boyle Envtl. Servs., Inc.*, 251 A.D.2d 11, 12 (1st Dept. 1998) ………………………8

## Statutes

29 U.S.C. § 216(b) ……………………………………………………………………………… *passim*

Federal Rules of Civil Procedure 23 ………………………………………………………… *passim*

NYLL Article 6 §§ 109 *et seq.*……………………………………………………………………6

N.Y. Codes Rules and Regulations 12 142-2.2 …………………………………………………6

NY CPLR § § 901…………………………………………………………………………………21

## Other Authorities

Advisory Committee Notes to Rules of Civil Procedure, Rule 23, 39 F.R.D. 69, (1966)…………14

H. Newberg & A. Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992) ………………….12

Weinstein-Korn-Miller, *New York Civil Practice* ………………………………………………18, 21

Wright & A. Miller, Federal Practice and Procedure § 1785 ……………………………………9

## PRELIMINARY STATEMENT

This action arises from the alleged failure of Defendants Alle Processing Corp., Albert Weinstock, Edwin Weinstock, Sam Hollander, and/or Mendel Weinstock (collectively, the "Defendants") to pay the Named Plaintiffs Kingborn Morris, Rafael Mateo, Darnell Pierre ("Named Plaintiffs"), 78 opt-in Plaintiffs, and a putative class ("Plaintiffs") all earned wages, overtime compensation and spread of hours compensation for work that they performed on behalf of Defendants at their Maspeth, New York food processing facility.

The instant motion seeks an Order granting certification of Plaintiffs' claims asserted under the New York Labor Law ("N.Y. Lab. Law"), pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek certification for a class consisting of:

> All individuals who performed work as food service employees and in other related trades for Defendant Alle Processing Corp. ("ALLE") at their food processing facility in Maspeth, New York from December 3, 2005 through the present (the "Class"). Corporate officers, shareholders, directors, and administrative employees are not part of the defined class.

For the reasons set forth below, Plaintiffs' motion should be granted in its entirety.

## STATEMENT OF FACTS

Beginning in approximately December 2005, and continuing through the present, Defendants employed Plaintiffs to perform work as food service employees, and in other related trades at Defendants' food processing facility, located on 56-20 59th Street, Maspeth New York 11378.[1] The named Plaintiffs, as well as 78 opt-in Plaintiffs, have chosen to join this lawsuit to date.

According to its website, Defendant Alle Processing Corp. is "a vertically integrated firm, engaged in the slaughtering, processing, selling and distributing of Glatt Kosher fresh and

---

[1] http://www.alleprocessing.com, accessed August 21, 2012

1

frozen beef, veal, lamb and poultry."[2] The company "manufactures a full line of Food Service and Consumer products."[3] In the instant litigation, Plaintiffs allege that Defendants failed to pay them minimum wages for all hours worked; failed to pay overtime compensation at time and one half the regular hourly wage for all hours worked beyond forty each week; and failed to pay spread of hours compensation. [See generally, Docket No. 1, Plaintiffs' Complaint].

Named Plaintiff Kingborn Morris worked for Defendants from approximately December 2007 to May 2008 in the Food Processing Department, Freezer Department, and Smoke House Department. [See Declaration of Kingborn Morris ("Morris Dec."), annexed to the Declaration of LaDonna Lusher, Esq. ("Lusher Dec.") as Exhibit "1," at ¶ 4.] Plaintiff Morris normally worked 6 days per week, Sunday through Friday, at least 10 hours per day. [Morris Dec. at ¶ 7.] Plaintiff Morris had a lunch break of approximately 30 minutes and two 15 minute coffee breaks. [Morris Dec. at ¶ 8.] Plaintiff Morris was paid approximately $7.15 per hour, but was not paid for all of the hours he worked, and was not paid overtime compensation for all of the hours he worked over forty in any given week. [Morris Dec. at ¶¶ 13-14.] When he worked more than 10 hours per day, Plaintiff Morris was not paid spread of hours compensation. [Morris Dec. at ¶ 15.] Finally, Plaintiff Morris also testified that he worked with approximately 300 other employees at the facility, and stated that he and his co-workers were not paid for approximately 30 minutes each day that they spent putting on and taking off their required uniforms. [Morris Dec. at ¶¶ 6, 10-11.]

Named Plaintiff Rafael Mateo worked for Defendants from approximately July 2006 to November 2009 in the Chicken Department. [See Declaration of Rafael Mateo ("Mateo Dec."),

---

2 Id.
3 Id.

2

annexed to the Lusher Dec. as Exhibit "2," at ¶ 3.] His primary duties included filling orders in the chicken room, stocking the freezer room, cleaning, and other related tasks at the facility. [Mateo Dec. at ¶ 4.] Plaintiff Rafael Mateo was paid approximately $9.00 per hour, but was not paid for all hours worked, including all overtime hours worked in any given week. [Mateo Dec. at ¶ 12.] Plaintiff Rafael Mateo normally worked 5 days per week, Monday through Thursday, at least 10 hours per day, and no less than 7 hours per day on Friday. [Mateo Dec. at ¶ 6.] When he worked more than 10 hours per day, Rafael Mateo testified, via his sworn declaration, that he was not paid spread of hours compensation. [Mateo Dec. at ¶ 14.] Finally, Plaintiff Rafael Mateo also testified that approximately 500 people worked at the facility with him, and that he and his co-workers were not paid for the hour each day that they spent putting on and taking off their required uniforms. [Mateo Dec. at ¶¶ 5, 9-10.]

Opt-in Plaintiff Effrain Irizarry worked for Defendants from approximately January 2007 to December 2009 in the Food Preparation Department. [See Declaration of Effrain Irizarry ("Irizarry Dec."), annexed to the Lusher Dec. as Exhibit "3," at ¶¶ 4-5.] His duties included attending the frozen spiral, preparing machines for molding, mixing the batter for cooking, weighing food, preparing the deep fryer, and packaging. [Irizarry Dec. at ¶ 6.] Plaintiff Irizarry normally worked 6 to 7 days per week, Sunday through Thursday, at least 10 hours per day. [Irizarry Dec. at ¶ 7.]  Plaintiff Irizarry worked half the day on Friday, and occasionally on Saturdays. [Irizarry Dec. at ¶ 7.] Plaintiff Irizarry was paid approximately $7.65 per hour, but was not paid for all hours worked, and did not receive overtime compensation for all of his overtime hours, or spread of hours compensation. [Irizarry Dec. at ¶¶ 15-16.] Finally, Plaintiff Irizarry also testified that he was not allowed to punch in before he had his uniform fully on, and had to punch out in the evenings before he took his uniform off. [Irizarry Dec. at ¶¶ 10, 12.]

Plaintiff Irizarry and his co-workers were not paid for the 30 to 40 minutes each day that they spent putting on and taking off their required uniforms. [Irizarry Dec. at ¶¶ 10-13.]

Opt-in Plaintiff David Benito worked for Defendants from approximately July 2007 to January 2012 in the Vegetable and Meat Departments. [See Declaration of David Benito ("Benito Dec."), annexed to the Lusher Dec. as Exhibit "4," at ¶¶ 4-5.] Plaintiff Benito normally worked 6 days per week, Sunday through Friday, at least 9 hours per day in the Vegetable Department, and Sunday through Friday, at least 10 hours per day in the Meat Department. [Benito Dec. at ¶ 8.] Plaintiff Benito was paid approximately $7.25 per hour when he worked in the Vegetable Department and $8.50 per hour when he worked in the Meat Department. [Benito Dec. at ¶ 17.] Plaintiff Benito was not paid wages for every hour he worked, or overtime compensation for all of the hours he worked over forty in any given week. [Benito Dec. at ¶¶ 17-18.] Plaintiff Benito was also not paid spread of hours compensation. [Benito Dec. at ¶¶ 17-18.] Plaintiff Benito testified that approximately 500 people worked at the facility, and he personally witnessed approximately 40 people putting on their uniforms in the morning before punching in, and punching out in the evenings before taking their uniforms off. [Benito Dec. at ¶¶ 7, 14-15.] Plaintiff Benito and his co-workers were not paid for the 30 minutes each day that they spent putting on and taking off their required uniforms. [Benito Dec. at ¶¶ 12-15.]

Opt-in Plaintiff Kenneth Patterson worked for Defendants from approximately August 2008 until July 2010 as part of the night crew in the Inventory Department. [See Declaration of Kenneth Patterson ("Patterson Dec."), annexed to the Lusher Dec. as Exhibit "5," at ¶ 4.] The night crew in this Department had 16 to 20 workers. [Patterson Dec., ¶ 6.] Plaintiff Patterson normally worked 5 days per week, Sunday through Thursday, at least 7 hours per day. [Patterson Dec. at ¶ 8.] He had a 30 minute lunch break. [Patterson Dec. at ¶ 9.] Plaintiff Patterson was paid

4

approximately $8.00 to $9.00 per hour, but was not paid for all hours worked, and was not paid overtime compensation for all hours worked over forty in any given week, or spread of hours compensation. [Patterson Dec. at ¶¶ 16-18.] Finally, Plaintiff Patterson also testified that he and his co-workers were not paid for the 30-35 minutes each day that they spent putting on and taking off their required uniforms. [Patterson Dec. at ¶¶ 11-14.]

Opt-in Plaintiff Robert Carl Lanza worked for Defendants from approximately January 2006 until January 2007 as part of the Food Processing Department. [See Declaration of Robert Carl Lanza ("Lanza Dec."), annexed to the Lusher Dec. as Exhibit "6," at ¶ 4.] The Food Processing Department had no less than 100 workers per shift. [Lanza Dec., ¶ 6.] Plaintiff Lanza normally worked 6 days per week, Sunday through Friday, at least 13 hours per day. [Lanza Dec. at ¶ 8.] He had a 30 minute lunch break and an additional 15 minute break. [Lanza Dec. at ¶ 9.] Plaintiff Lanza was paid approximately $7 per hour, but was not paid for all hours worked, and was not paid overtime compensation for all hours worked over forty in any given week, or spread of hours compensation. [Lanza Dec. at ¶¶ 16-18.] Finally, Plaintiff Lanza also testified that he and his co-workers were not paid for the hour each day that they spent putting on and taking off their required uniforms. [Lanza Dec. at ¶¶ 11-14.]

In summation, Plaintiffs testified that they regularly worked more than 40 hours each week, but were not paid overtime compensation at time and one-half their regular hourly wage for all of these hours[Morris Dec. at ¶¶ 13-14; Mateo Dec. at ¶¶ 12-13; Irizarry Dec. at ¶ 15 ; Benito Dec. at ¶ 17; Patterson Dec. at ¶¶ 16-17; Lanza Dec. at ¶¶ 16-17] Plaintiffs further testified that they were not paid minimum wages for all the hours that they worked, namely the 40 to 60 minutes per day that they spent putting on and taking off their required uniforms. [Morris Dec. at ¶¶ 10-11; Mateo Dec. at ¶¶ 9-10; Irizarry Dec. at ¶¶ 10-13; Benito Dec. at ¶¶ 12-

5

15; Patterson Dec. at ¶¶ 11-14.]Finally, Plaintiffs collectively testified that they also did not get an extra hour of pay at the minimum wage rate when they worked more than 10 hours in one day [Morris Dec. at ¶ 15; Mateo Dec. at ¶ 14 ; Irizarry Dec. at ¶ 16; Benito Dec. at ¶ 18; Patterson Dec. at ¶ 18; Lanza Dec. at ¶ 18.]

Moreover, a review of Defendants' own timekeeping records confirms that Defendants frequently, and without explanation, "adjusted" Plaintiffs' time cards to remove or shave time from when Plaintiffs originally punched in or punched out in the early mornings and evenings. [See Lusher Dec., Exhibits 9-15.] For example, the time record for Plaintiff Mateo for the week of 8/13/2006 through 8/19/2006 shows that Defendants changed Mateo's punch-in time every day that week to 7:00 a.m., even though Mateo originally clocked-in and began working before 7:00 a.m. This alteration to Plaintiff Mateo's time record resulted in Mateo not being compensated for approximately ten to fifteen minutes each day that week. [See Lusher Dec., Exhibit 9.] Likewise, Defendants shaved time-off of Plaintiff Benito's punch-in time for every day during the week of 7/29/2007 through 8/4/2007. [See Lusher Dec., Exhibit 11.] This resulted in Benito not being compensated for up to 20 minutes per day that week. [See Lusher Dec., Exhibit 11.] Defendants engaged in this illegal practice of shaving time from the Plaintiffs' time records for all employees. [See Lusher Dec., Exhibits 9-15.]

On December 3, 2008, Plaintiffs filed a complaint against Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216(b); various provisions of the New York Labor Law; Title 12 of the New York Codes, Rules, and Regulations ("NYCRR") §§ 142-2.2 and -2.4; and Title 6, Section 6-109 of the New York City Administrative Code to recover unpaid wages, unpaid overtime compensation, and spread of hours compensation owed to Plaintiffs and all similarly situated persons who are presently or were formerly employed by

Defendants.

Plaintiffs' FLSA and New York Labor Law claims unquestionably derive from a common nucleus of operative fact. Indeed, both the federal and state claims arise out of the same alleged discriminatory conduct of the Defendants, *i.e.*, that they failed to pay their employees, who comprise the proposed class, their statutorily mandated wages. A class action is the most efficient, most effective, and least costly method of resolving the potential 2,000 claims[4] in this dispute. As set forth below, Plaintiffs move for an Order granting class certification under Fed. R. Civ. P. 23 to cover Plaintiffs' New York Labor Law claims.[5]

## ARGUMENT

### POINT I

### THIS COURT SHOULD CERTIFY THIS ACTION AS A
### CLASS ACTION PURSUANT TO RULE 23

Plaintiffs respectfully request that this Court grant class certification of this action pursuant to Rule 23 of the Federal Rules of Civil Procedure to cover Plaintiffs' New York Labor Law claims. Unlike FLSA claims, which require potential class members to affirmatively "opt-in," the New York Labor Law contains no such mechanism, and instead is subject to Rule 23. In recent years, numerous courts have recognized the dual nature of these claims and have granted bi-furcated certification of NYLL claims under Rule 23, while certifying the FLSA component of the class claims pursuant to 29 U.S.C. § 216(b). Diaz v. Scores Holding Co., 2008 U.S. Dist. LEXIS 38248 (S.D.N.Y. May 9, 2008) ("the courts in this circuit do not consider FLSA opt-in and state-law opt-out class certification requirements conflicting."); see also Poplawski v.

---

[4] The number of putative class members is based on a mailing list provided by Defendants on or about February 2010 which was used to send notice to potential claimants pursuant to 29 U.S.C. 216(b). See Lusher Dec., ¶ 2.

[5] The proposed class action notice and publication order are attached to the Lusher Dec. as Exhibits 7 and 8, respectively.

Metroplex on the Atlantic, LLC, 2012 U.S. Dist. LEXIS 46408 (E.D.N.Y. Apr. 2, 2012);

Guzman v. VLM, Inc., 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. March 2, 2008); Iglesias-

Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007); Velez v. Majik Cleaning

Service, Inc., 2005 WL 106895 (S.D.N.Y. 2005); Ansoumana v. Gristede's Operating Corp., 201

F.R.D. 81 (S.D.N.Y. 2001); Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351 (S.D.N.Y. 1999).

As demonstrated below, class certification should be granted because Plaintiffs clearly meet the

Rule's requirements.

## A.   Rule 23 Is To Be Liberally Construed

To obtain class action certification, Plaintiffs must establish that all four requisites of

Rule 23(a) and at least one part of Rule 23(b) are met. See Salim Shahriar v. Smith & Wollensky

Rest. Group, Inc., 659 F.3d 234, 251 (2d Cir. N.Y. 2011). Rule 23 provides that one or more

members of a class may sue as representative parties on behalf of a class if:

1.   the class is so numerous that joinder of all members is impracticable ["numerosity"], see Fed. R. Civ. P. 23(a)(1);

2.   there are questions of law or fact common to the class ["commonality"], see Fed. R. Civ. P. 23(a)(2);

3.   the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"], see Fed. R. Civ. P. 23(a)(3);

4.   the representative parties will fairly and adequately protect the interests of the class ["adequacy of representation"], see Fed. R. Civ. P. 23(a)(4); and

5.   the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
    (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions;
    (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

8

(C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum;

(D) the difficulties likely to be encountered in the management of a class action ["superiority"], see Fed. R. Civ. P. 23(b)(3).

As the Supreme Court recently observed, the requirements of Rule 23(a) are meant to "ensure[] that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate," and "effectively limit the class claims to those fairly encompassed by the named plaintiffs claims." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (U.S. 2011). It is well established that the criteria set forth in Rule 23 are to be liberally construed. Flores v. Anjost Corp., 2012 U.S. Dist. LEXIS 85171 (S.D.N.Y. June 19, 2012) ("The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.") (citing Espinoza v. 953 Associates LLC, 2011 U.S. Dist. LEXIS 132098, *6 (S.D.N.Y. Nov. 16, 2011) (quoting Gortat v. Capala Bros., Inc., 257 F.R.D. 353, 361 (E.D.N.Y. 2009)); see also 7A C. Wright & A. Miller, Federal Practice and Procedure § 1785.

**B.    This Class Action Satisfies All of Rule 23's Requirements**
**(1) The Class Is So Numerous That Joinder Of All Members is Impracticable**

Rule 23(a) requires that the class be so numerous that joinder of all members is impracticable. Iglesias-Mendoza, 239 F.R.D. at 370; Velez, 2005 WL 106895 *2; Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 85 (S.D.N.Y. 2001). Nevertheless, courts have held that "impracticability for purposes of Rule 23 class certification does not mean impossibility." Iglesias-Mendoza, 239 F.R.D. at 370; Velez, 2005 WL 106895 *2; Ansoumana, 201 F.R.D. at 85. Further, there is no requirement that the exact number of class members be immediately known. As stated by the Court in Velez, supra:

9

> "Although a plaintiff need not present a precise calculation of the number of class members and it is permissible for the court to rely on reasonable inferences drawn from available facts, the movant 'must show some evidence of or reasonably estimate the number of class members.'"

Id. at *2. See also Piper v. Portnoff Law Assocs., 216 F.R.D. 325, 329 (E.D. Pa. 2003) ("Although the plaintiff is unable to establish the exact number of class members who suffered actual damages, it is not necessary for the plaintiff to make such a showing at this stage in the litigation."); Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir 1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."). Moreover, there is a presumption that joinder is impracticable when the prospective class consists of forty or more members. Iglesias-Mendoza, 239 F.R.D. at 370; Velez, 2005 WL 106895 *2; Ansoumana, 201 F.R.D. at 85.

In the instant case, at least 2,000 employees have worked at Defendants' food processing facility in Maspeth, New York.[6] To date, 78 of those current and former workers have already opted into the case. Plaintiffs have also testified via their sworn declarations that they worked with no fewer than 200 to 400 employees at the facility. [Morris Dec. at ¶ 6; Mateo Dec. at ¶ 5; Irizarry Dec. at ¶¶ 11,13; Benito Dec. at ¶ 7; Patterson Dec. at ¶¶ 6,12.] Thus, the putative class is sufficiently large that joinder of all members is impracticable.

The instant class, as defined above, is narrowly defined to avoid being over-inclusive, but large enough that joinder is not practicable. Under these circumstances, joinder is both impracticable and undesirable.

### (2) Commonality -- The Claims of Each Member of the Putative Class Arise from a Common Wrong

---

6 The number of putative class members is based on a mailing list provided by Defendants on or about February 2010 which was used to send notice to potential claimants pursuant to 29 U.S.C. 216(b). See Lusher Dec., ¶ 2.

10

The second requirement for certification is that common questions of law or fact predominate over any questions affecting individual members. The commonality requirement may be met "when individual circumstances of class members differ, but 'their injuries derive from a unitary course of conduct.'" Velez, supra, 2005 WL 106895 *2 (quoting Marisol A. v. Giuliani, 126 F.3d 372, 377 (2d Cir. 1997)). This requirement is not overbearing and is satisfied if there is "at least one question of fact or law [in common] with the grievances of the prospective class." Velez, 2005 WL 106895 *2; Ansoumana, 201 F.R.D. at 85; German v. Federal Home Loan Mortgage Corp., 885 F. Supp. 537, 553 (S.D.N.Y. 1995); see also Stewart v. Abraham, 275 F.3d 220 (3d Cir. 2001).

In the instant action the claims of the proposed class members are essentially identical (unpaid minimum wages, unpaid overtime compensation, and unpaid spread of hours compensation), although it is not necessary that every issue be common to each and every member of the class. Indeed, to show commonality, Plaintiffs must demonstrate the existence of only one common question of fact or law between the named Plaintiffs and the prospective class. Neal v. Casey, 43 F.3d 48 (3d Cir. Pa. 1994) (class certification proper where "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class"); Arch v. American Tobacco Co., 175 F.R.D. 469, 477 (E.D. Pa. 1997) ("For example, whether defendants have acted in concert or pursuant to a common design is one common question "). The critical inquiry is "whether the common questions are at the core of the cause of action alleged." Velez, 2005 WL 106895 *2.

Furthermore, it is well established that "individual questions with respect to damages will not defeat class certification or render a proposed representative inadequate unless that issue

11

creates a conflict which goes to the heart of the lawsuit." Ansoumana, 201 F.R.D. at 86 (citing In re AM Int'l, Inc. Securities Litigation, 108 F.R.D. 190, 196 (S.D.N.Y. 1985)). Indeed, because the requirement may be satisfied by a single common issue, it is easily met. See H. Newberg & A. Conte, 1 Newberg on Class Actions § 3.10, at 3-50 (1992); see also In re School Asbestos Litigation, 789 F.2d 996, 1010 (3d Cir. 1986) ("the 'threshold of commonality is not high.'").

In the present action, the Plaintiffs' claims and those of the members of the putative class arise from a common wrong: Defendants failed to pay, or to ensure payment, of the proper minimum wages, overtime wages, and spread of hours rates for work performed by Plaintiffs in any given work week. The existence of these "common wrongs" satisfies the commonality requirement. See, e.g., Cohen v. Uniroyal, 77 F.R.D. 685, 691 (E.D. Pa. 1977) (class certification proper where class members suffered common injury at the hands of defendant).

The questions of law and fact common to all members of the putative class that predominate over questions affecting only individual class members include:

Common Factual Questions:

(a)     Whether Defendants paid the members of the class the rate of pay required by the New York Labor Law?

(b)     Whether Defendants paid the members of the class for all of the hours actually worked?

(c)     Whether Defendants paid the members of the class overtime compensation for all of the hours over forty they worked in any given week?

(d)     Whether Defendants paid the members of the class spread of hours compensation for the days they worked more than ten hours per day?

(e)     Whether Defendants refused to pay the members of the class for the time they

12

spent putting on and taking off their uniforms each day?

(f)     Whether Defendants shaved time off of class members time records which resulted in class members not being compensated for all hours worked?

Common Legal Questions:

(a)     Whether Defendants complied with New York Labor Law pertaining to minimum wages for every hour worked and overtime compensation for hours worked beyond 40 each week?

(b)     Whether or not Defendants complied with New York Labor Law pertaining to spread of hours compensation?

(c)     Whether any individual Defendant is personally liable for failure to pay minimum wages for every hour worked, overtime compensation for hours worked beyond 40 each week, and spread of hours compensation after ten hours worked per day?

The commonality of these issues is evident. Each of these core issues involve the existence of a common nucleus of operative facts and the evidence required to prove these issues will be the same. Indeed, the questions of law and fact concerning Defendants' liability to all class members, such as whether Defendants violated New York law, and whether the class was paid minimum wages for all hours worked, overtime compensation for all hours worked over 40 each week, and spread of hours compensation after ten hours worked per day are not merely common questions but are *identical questions*. The harm that the Plaintiffs have suffered in this case is identical to the harm suffered by each member of the class---namely that they were all not paid as required by the applicable statutes. [See Lusher Dec. ¶ 2; see generally Morris Dec. at ¶¶ 7, 10, 11, 13, 14, 15; Mateo Dec. at ¶¶ 6, 9, 10, 12, 13, 14; Irizarry Dec. at ¶¶ 7, 10, 11, 13, 15,

16; Benito Dec. at ¶¶ 8, 13, 15, 17, 18; Patterson Dec. at ¶¶ 11, 14, 16, 17, 18; Lanza Dec. at ¶¶ 8, 11, 14, 16, 17, 18.]

### (3) Predominance

Predominance is readily satisfied "where the core claims asserted by each class member all arise out of the same transaction or occurrence." Bonett v. Educ. Debt Servs., 2003 U.S. Dist. LEXIS 9757, at *12 (E.D. Pa. May 9, 2003). Here all of the class members suffered from not being paid minimum wages for all hours worked, not being paid overtime compensation for all hours worked over 40 each week, and not being paid spread of hours compensation. Minor factual distinctions in the amounts owed and hours worked are irrelevant, so long as each class member worked for Defendants and was similarly underpaid. Indeed, courts have consistently and repeatedly found that if there are common issues of law or fact with respect to liability, predominance exists even if there are individual questions relevant to damages. See Iglesias-Mendoza, 239 F.R.D. at 372-73; Velez, 2005 WL 106895 *3; Ansoumana, 201 F.R.D. at 88-89; Pruitt v. Allied Chem. Corp., 85 F.R.D. 100 (E.D. Va. 1980); In re Folding Carton Antitrust Litigation, 75 F.R.D. 727, 734-35 (N.D. Ill. 1977); Philadelphia v. American Oil Co., 53 F.R.D. 45, 67-68 (D.N.J. 1971); Illinois v. Harper & Row Publishers, Inc., 301 F.Supp. 484, 491 (N.D. Ill. 1969); Phila. Elec. Co. v. Anaconda Am. Brass & Co., 43 F.R.D. 452, 457-58 (E.D. Pa 1968). See also Advisory Committee Notes to Rules of Civil Procedure, Rule 23, 39 F.R.D. 69, 102-04 (1966). The fact that proof of damages will differ for each class member because they all have worked a different number of hours is not a sufficient reason to deny class status. See Fischer v. Plessey Co. Ltd., 103 F.R.D. 150, 156 (S.D.N.Y. 1984) ("[i]n general, courts determining whether common questions predominate focus on the liability issues as opposed to individual questions such as reliance and damages").

14

In the present case, Defendants are statutorily liable for paying or ensuring that the Plaintiffs and other members of the putative class are paid the full minimum wage for every hour that they worked, overtime compensation for every hour worked over 40 each week, and spread of hours compensation in the form of an extra hour of pay at the minimum wage rate upon working more than ten hours in a single day. The failure to pay or ensure these payments had a common impact on all class members and has a common impact on the liability of each Defendant. Indeed, Defendants' breach of their statutory duties presents a significant common issue. Plaintiffs will present evidence that they were not paid minimum wages for every hour that they worked, that they were not paid overtime compensation for every hour that they worked over 40 weekly, and that they were not paid an extra hour of pay at the minimum wage rate upon working more than 10 hours in a single day. [See Lusher Dec. ¶ 2; see generally Morris Dec. at ¶¶ 7, 10, 11, 13, 14, 15; Mateo Dec. at ¶¶ 6, 9, 10, 12, 13, 14; Irizarry Dec. at ¶¶ 7, 10, 11, 13, 15, 16; Benito Dec. at ¶¶ 8, 13, 15, 17, 18; Patterson Dec. at ¶¶ 11, 14, 16, 17, 18; Lanza Dec. at ¶¶ 8, 11, 14, 16, 17, 18.] These common issues clearly constitute a predominant aspect of the claims that the Plaintiffs and putative class must and will prove.

### (4) The Named Plaintiffs' Claims Are Typical Of the Claims of the Putative Class

Rule 23(a) requires that the Named Plaintiffs' claims be "typical" of the proposed class. The essence of the typicality requirement is not only that the representative party must have an individual cause of action, but that the interest of the representative must be closely identified with the interest of all other members of the class. Fed. R. Civ. P. 23(a)(3). Consequently, "to establish typicality plaintiffs need only show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" Gortat v. Capala Brothers, Inc., 2010 U.S. Dist. LEXIS 35451, *13

(E.D.N.Y. April 9, 2010) (citing In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d. Cir. 2009); see also Ansoumana, 201 F.R.D. at 86; Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001); Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985) (typicality not met where "the named plaintiff's individual circumstances are markedly different or...the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.").

Here, the minimum wage, overtime claims, and spread of hours claims of the Plaintiffs and the putative class members are similar and arise from the same scheme, thus, "the typicality requirement is satisfied regardless of whether different facts underlie each class member's claim." Piper v. Portnoff Law Assocs., 216 F.R.D. at 329; see also Krell v. Prudential Ins. Co. of Am., 148 F.3d 283, 311-12 (3d Cir. 1998); Dura-Bilt Corp. v. Chase Manhattan Corp., 89 F.R.D. 87, 99 (S.D.N.Y. 1981) (typicality requirement is satisfied when the named plaintiffs' claims "arises from the same event or course of conduct" and "[is] based on the same legal theory" as the claims of other class members such that "[b]y advancing [their] own interests, [the named] plaintiff will advance the interest of the class") (citations and footnotes omitted); Eisen v. Carlisle & Jacquelin, 391 F.2d 555, 562 (2d Cir. 1968). Moreover, courts generally construe the typicality requirement liberally. See Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397 (D.N.J. 1990) (citing Weiss v. York Hospital, 745 F.2d 786, 809 (3d Cir. 1984) cert. denied 470 U.S. 1060 (1985)). Nor will a difference in damages arising from a disparity in injuries among the plaintiff class preclude typicality. Ansoumana, 201 F.R.D. at 87.

In this case, the Plaintiffs' claims are typical of the claims of the members of the putative class. The Plaintiffs and the putative class members were employed by Defendants to provide labor at their food processing facility in Maspeth, New York. [ See Lusher Dec. ¶ 1; see also

16

Morris Dec. at ¶¶ 3-5; Mateo Dec. at ¶¶ 3-5; Irizarry Dec. at ¶¶ 4-6; Benito Dec. at ¶¶ 4-6; Patterson Dec. at ¶¶ 4-7; Lanza Dec. at ¶¶ 4-5,7.] The Plaintiffs and putative class members were all denied the minimum wages, overtime compensation, and the spread of hours compensation that they were legally entitled to receive [ See Lusher Dec. ¶ 2; see also Morris Dec. at ¶¶ 14-15; Mateo Dec. at ¶¶ 13-14; Irizarry Dec. at ¶¶ 15-16; Benito Dec. at ¶¶ 17-18; Patterson Dec. at ¶¶ 16,18; Lanza Dec. at ¶¶ 17-18.] Moreover, a review of Defendants' own timekeeping records confirms that Defendants unlawfully shaved time from the time records of the Plaintiffs and putative class to illegally reduce the amount of hours they actually worked. [See Lusher Dec., Exhibit 10.] Therefore, the Plaintiffs, like every member of the putative class, have been injured by Defendants in the same manner [ See Lusher Dec. ¶ 2; see also Morris Dec. at ¶¶ 2,17,19; Mateo Dec. at ¶¶ 2,16,18; Irizarry Dec. at ¶¶ 2-3; Benito Dec. at ¶¶ 2-3; Patterson Dec. at ¶¶ 2-3; Lanza Dec. at ¶¶ 2-3.] Thus, the claims of the Plaintiffs and all other members of the putative class arise from the same conduct of Defendants and are based on the same legal theory – that Defendants breached their statutory obligations to pay or to ensure payment to them of the required wages. Typicality is present.

      (5)    **The Named Plaintiffs Will Fairly and**
              **Adequately Protect the Interests of the Class**

      Rule 23(a)(4) requires that the Named Plaintiffs be in a position to adequately protect the interests of the members of the class. The adequacy of representation prong involves a two-step inquiry: (1) whether Class Counsel is qualified, and (2) whether any conflict or antagonistic interests exist between the Named Plaintiffs and the putative class members. Iglesias-Mendoza, 239 F.R.D. at 371-72; Velez, 2005 WL 106895 *3; Ansoumana, 201 F.R.D. at 87; Weiss v. York Hosp., 745 F.2d at 811; Samuel-Bassett v. Kia Motors Am., Inc., 212 F.R.D. 271, 279 (E.D. Pa.

17

2002) ("In short, the plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation, and the plaintiffs must not have interests antagonistic to those of the class. It is the defendants' burden to show the inadequacy of plaintiff's class representation."). In addition, courts have also considered whether the representatives are familiar with the action, whether they have abdicated control of the litigation to class counsel, and whether they are of sufficient moral character to represent a class. Velez, 2005 WL 106895 *3 (citing Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998)).

Here, the Plaintiffs are represented by counsel who are very experienced in class actions, labor and employment law, and wage cases in particular, and have "demonstrated a level of competence ensuring that they can fairly and adequately represent" class members in cases such as this one. Ansoumana, 201 F.R.D. at 87; Pesantez v. Boyle Envtl. Servs., Inc., 251 A.D.2d 11, 12 (1st Dept. 1998). In fact, Plaintiffs' counsel has represented classes that were certified in dozens of cases similar to the instant action in both state and federal courts. These cases include Poplawski v. Metroplex on the Atlantic,LLC, 11-cv-3765, April 2, 2012, Order by Judge Weinstein ("Plaintiffs' counsel has considerable experience in class actions and labor law, including unpaid wage claims"); Dabrowski v. Abax Incorp., 2011 NY Slip Op 4303, 923 N.Y.S.2d 505 (Sup. Ct. NY. App. Div. 1st Dept. May 24, 2011) ("Plaintiffs' counsel has demonstrated its expertise and zealous representation of the plaintiffs here, as well as in prior class action cases which have reached this court on appeal."); Perez v. AC Roosevelt Food Corp., 10-cv-4824, May 3, 2011 Order by Judge Gleeson; Guzman v. VLM, Inc., 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. March 2, 2008); Velez v. Majik Cleaning Service, Inc., 2005 WL 106895 (S.D.N.Y. 2005); Barone v. Safeway Steel Products, Inc., 2005 WL 2009882 (E.D.N.Y.

2005); Brunson v. City of New York, 2000 WL 1876910 (S.D.N.Y. 2000); Brzychnalski v.

UNESCO, Inc., 35 F.Supp.2d 351 (S.D.N.Y. 1999) and others. [See Lusher Dec., ¶ 3.]

Concerning the absence of conflict and antagonistic interests between the Named

Plaintiffs and the class members, this Court recognized in Velez:

> There is no indication here that the named plaintiffs have any
> interests that are antagonistic to the potential class members--the
> named plaintiffs wish to represent their fellow co-workers in a
> collective attempt to receive the wages due them. As the named
> plaintiffs and putative class members share this common interest,
> there is no question as to the adequacy of representation in this
> matter.

In the present case, Messrs. Morris, Mateo and Pierre wish to represent their fellow co-

workers in a collective attempt to the receive wages owed to them for the many hours of work

that they performed for Defendants, and share that common interest with the putative class. [See

Lusher Dec. ¶ 2; see also Morris Dec. at ¶¶ 1, 2, 19; Mateo Dec. at ¶¶ 1, 2, 18; Irizarry Dec. at ¶

2; Benito Dec. at ¶ 2; Patterson Dec. at ¶ 2.] Therefore, there is no basis to question the adequacy

of representation in this matter.

### (6)    A Class Action Is Superior to Other Available Methods

Rule 23(b)(3) requires that a class action "is superior to other available methods for the

fair and efficient adjudication of the controversy." Courts should consider "the interest of the

members of the class in individually controlling the prosecution or defense of separate actions

and the difficulties likely to be encountered in the management of a class action." Iglesias-

Mendoza, 239 F.R.D. at 373; Velez, 2005 WL 106895 *3. In evaluating the superiority factor, a

court must balance, in terms of fairness and efficiency, the merits of a class action against those

of "alternative available methods" of adjudication.  Katz v. Carte Blanche Corp., 496 F.2d 747,

757 (3d Cir.) (en banc), cert. denied, 419 U.S. 885 (1974).

19

Courts also look to such factors as whether judicial economy will result from treatment of the case as a class action and whether minimization of overall expense and uniformity will be furthered. In re "Agent Orange" Prod. Liab. Litig., 100 F.R.D. 718, 724 (E.D.N.Y. 1983); In re Asbestos Sch. Litig., 104 F.R.D. 427, 433 (E.D.Pa. 1984), aff'd, 789 F.2d 996 (3d Cir. 1986). Additionally, when common issues predominate, courts generally find the class procedure to be the best, and indeed, normally the only realistic means of disposing of a large number of claims arising out of the same operative facts. In re "Agent Orange" Prod. Liab. Litig., 506 F.Supp. 762, 787-88 (E.D.N.Y. 1980); Hedges Enterprises, Inc. v. Continental Group, Inc., 81 F.R.D. 461, 476-77 (E.D. Pa. 1979).

In the instant matter, the class action device is superior to any other method for the fair and efficient adjudication of the issues before this Court. Plaintiffs allege that Defendants' actions caused 2,000 workers to suffer, in the aggregate, hundreds of thousands of dollars in damages. [See Lusher Dec., ¶ 2.] It is clear that an enormous amount of time and expense will be saved by certifying the instant class instead of forcing each of these workers to maintain their own individual lawsuits. The collective presentation of liability evidence serves the interest of all parties and prevents Defendants from exerting a coercive power upon class members who would each be required to retain counsel to prosecute their individual actions.

Moreover, given the expense of litigation and the relatively small size of the numerous individual claims, many workers would be unable to pursue redress for their claims absent class certification. [See Morris Dec. at ¶¶ 18-19; Mateo Dec. at ¶¶ 17-18; Irizarry Dec. at ¶ 17; Benito Dec. at ¶ 19; Patterson Dec. at ¶ 19.] Subjecting the court and the litigants to the cost and time of multiple trials would be wasteful. Accordingly, a class action is not only superior but, indeed, the only practical method of adjudication of obtaining relief for the members of the class. See 2

20

Weinstein-Korn-Miller, <u>New York Civil Practice</u>, ¶ 901.19 at 9-97 ("[T]he superiority requirement is most likely to be met in the paradigmatic case for which the class action device was developed: a case in which a large number of claimants each suffer damage in a small individual amount. In such cases, the class action is not only a superior device, but the only device by which all such claims may be adjudicated.").

Finally, many class members may have been reluctant to participate in the FLSA portion of this action due to fears of retaliation. Thus, "the opt-out nature of a class action is a valuable feature lacking in an FLSA collective action," where individuals must affirmatively opt-in to participate. <u>Guzman</u>, <u>supra</u>, 2008 U.S. Dist. LEXIS 15821 * 28. As recognized by the Honorable John Gleeson in a case very similar to the instant matter, where a class of bakery workers were seeking certification of their unpaid wage claims under the FLSA and NYLL,:

> [T]he values of judicial economy, convenience, and fairness all favor exercising supplemental jurisdiction.... The factual overlap between the federal claims and the state claims is virtually total; it would ill serve the interests of convenience or judicial economy to relitigate in state court the defendants' pay practices. To the extent that employees may feel intimidated about volunteering to participate in an action as suggested by the plaintiffs, fairness counsels in favor of exercising supplemental jurisdiction to hear their claims. And due to the straightforward nature of the legal questions under state law, no significant comity interest counsels in favor of allowing state courts to decide those claims.

<u>Id.</u>; <u>see also</u> <u>Noble v. 93 Univ. Pl. Corp.</u>, 224 F.R.D. 330, 346 (S.D.N.Y. 2004) (finding superiority based in part on the possibility that employees would be dissuaded from pursuing individual claims by fear of reprisal); <u>Ansoumana, 201 F.R.D. at 85-86</u> (considering likelihood that low-wage immigrant employees would fear reprisal as affecting the likelihood that they would pursue claims independently of a class action).

21

Here, just like in Guzman, resolving the common issues on a class-wide basis will create uniform resolution of the issues under state and federal law, as well as achieve judicial economy, convenience and fairness to all parties. Accordingly, the New York Labor Law claims associated with this action should be certified as a class action pursuant to Fed. R. Civ. P. 23.

**C.   APPLICABLE CASE LAW SUPPORTS THE CONCLUSION THAT THIS CLASS ACTION SHOULD BE CERTIFIED**

There are numerous other examples of class action status being granted in cases seeking recovery of unpaid or underpaid wages. See e.g., Gortat v. Capala Brothers, Inc., 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. April 9, 2010); Guzman v. VLM, Inc., 2008 U.S. Dist. LEXIS 15821 (E.D.N.Y. March 2, 2008) (court certified class of bakery workers pursuant to FLSA and Rule 23); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363 (S.D.N.Y. 2007) (court granted joint class certification pursuant to FLSA and Rule 23 to workers employed as duck feeders and butchers who claimed they were not paid minimum wages and overtime compensation); Velez v. Majik Cleaning Service, Inc., 2005 WL 106895 (S.D.N.Y. 2005) (court granted joint certification pursuant to FLSA and Rule 23 to past and present employees of defendant who performed residential and commercial cleaning services); Barone v. Safway Steel Products, Inc., 2005 WL 2009882 (E.D.N.Y. 2005) (court certified class action brought on behalf of unpaid workers who worked on publicly financed construction projects); Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81 (S.D.N.Y. 2001) (court certified class pursuant to FLSA and Rule 23 of approximately 350 unskilled workers who worked as delivery persons); Yanda v. Vanguard Meter Serv., Inc., 92 Civ. 2827 (S.D.N.Y. 1995); Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351 (S.D.N.Y. 1999). Accordingly, in light of the numerous courts that have granted class certification in actions similar to the case at bar, and because Plaintiffs have met

22

the requirements pursuant to Fed. R. Civ. P. 23, this Court should grant class certification of this action.

## CONCLUSION

Wherefore, for the reasons set forth above and those set forth in the accompanying Declaration of LaDonna Lusher, Esq., Plaintiffs respectfully request that this Court issue an Order certifying a class pursuant to Fed. R. Civ. P. 23 with respect to Plaintiffs' claims under New York Labor Law, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      August 31, 2012

                                  /s/
                                  LaDonna Lusher, Esq.
                                  VIRGINIA & AMBINDER, LLP
                                  111 Broadway, Suite 1403
                                  New York, New York 10006
                                  Tel:   (212) 943-9080
                                  Fax:   (212) 943-9082
                                  llusher@vandallp.com

                                  *Attorneys for Plaintiffs and Putative Class*

23