UNITED STATES DISTRICT COURT                    <u>For Online Publication Only</u>
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KINGBORN MORRIS, RAFAEL MATEO, and
DARNELL PIERRE, on behalf of all other persons          **<u>MEMORANDUM AND</u>**
similarly situated who were employed by ALLE            **<u>ORDER</u>**
PROCESSING CORP., ALBERT WEINSTOCK,
EDWIN WEINSTOCK, SAM HOLLANDER, and                     08–CV–4874 (JMA)
MENDEL WEINSTOCK,

                            Plaintiffs,


        -against-


ALLE PROCESSING CORP., ALBERT WEINSTOCK,
EDWIN WEINSTOCK, SAM HOLLANDER, and
MENDEL WEINSTOCK,

                            Defendants.
------------------------------------------------------------------X
A P P E A R A N C E S:

LaDonna Marie Lusher
Lloyd Robert Ambinder
Virginia & Ambinder LLP
111 Broadway, 14th Floor
New York, NY 10006
        *Attorneys for Plaintiffs*


Jeffery A. Meyer
Kaufman, Dolowich, Voluck, & Gonzo, LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
        *Attorney for Defendants*

**AZRACK**, **United States Magistrate Judge:**

        Plaintiffs Kingborn Morris, Rafael Mateo, and Darnell Pierre, former employees of

defendant Alle Processing Corporation ("Alle"), bring this action on behalf of a putative class

against Alle, Albert Weinstock, Edwin Weinstock, Sam Hollander, and Mendel Weinstock

(collectively, the "defendants").  Plaintiffs allege that defendants violated the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 207, by failing to pay overtime wages and New York Labor Law ("NYLL") § 193, Title 12 of New York Codes, Rules and Regulations ("NYCRR") §§ 142–2.2 and 142–2.4, and Title 6 of New York City Administrative Code § 6–109 by failing to pay earned wages, overtime wages, and spread of hours compensation.

On December 22, 2009, this Court conditionally certified a collective action for plaintiffs' federal law claim, pursuant to the FLSA, 29 U.S.C. § 216(b).  Dec. 22, 2009 Order, ECF No. 20.  Currently before the Court is plaintiffs' motion for class certification, pursuant to Federal Rule of Civil Procedure 23, for plaintiffs' state law claims.  Plaintiffs also request authorization to send their proposed notice to prospective class members.

For the reasons set forth below, the Court grants plaintiffs' motion for class certification.

## BACKGROUND

### 1.  Facts

Alle is a New York corporation with its principal location, a food processing plant (the "plant"), located at 56-20 59th Street, Maspeth, New York.  Compl. ¶¶ 11, 25, ECF No. 1.  Individual defendants Albert Weinstock, Edwin Weinstock, Sam Hollander, and Mendel Weinstock are officers and principal shareholders of Alle.  Id. ¶¶ 13–16.  Alle is "a vertically integrated firm, engaged in the slaughtering, processing selling and distributing of Glatt Kosher fresh and frozen beef, veal, lamb and poultry."  Pls.' Mem. in Supp. Mot. for Class Certification ("Pls.' Mem.") at 2 (quoting www.alleprocessing.com), ECF No. 54.

Plaintiffs are former food service employees of defendants' plant.  Compl. ¶ 25.  Plaintiffs allege that defendants failed to pay them and other current and former Alle employees: (1) minimum wages for all hours worked, including (a) time spent donning and doffing uniforms and (b) time defendants shaved from employees' time cards; (2) overtime compensation at time-

2

and-a-half the regular hourly wage for all hours worked beyond forty each week; and (3) spread of hours compensation for hours worked over ten in a single day.  Id. ¶¶ 2, 39–40; Pls.' Mem. at 2; Pls.' Reply Mem. in Supp. Mot. Class Cert. ("Pls.' Reply") at 1–2, ECF No. 51.  Plaintiffs Morris and Mateo have submitted declarations in support of the instant motion.  Decl. of Kingborn Morris ("Morris Decl."), Decl. of LaDonna Lusher in Supp. Pls.' Mot Class Cert. ("Lusher Decl.") Ex. 1, ECF No. 53; Decl. of Rafael Mateo ("Mateo Decl."), Lusher Decl. Ex. 2.

Morris worked at the plant from December 2007 until May 2008, during which time he worked in the Food Processing Department, the Freezer Department, and the Smoke House Department.  Morris Decl. ¶¶ 3–4.  Every day Morris was required to wear a uniform consisting of a coat, boots, gloves, hairnet, hardhat, jacket, and glasses.  Id. ¶ 10.  Morris typically worked no fewer than ten hours per day, six days per week, and was paid $7.15 per hour by check.  Id. ¶¶ 7–13.

Mateo worked at the plant from July 2006 until November 2009, during which time he worked in the Chicken Department.  Mateo Decl. ¶ 3; Pls.' Mem. at 2.  Mateo was also required to wear a uniform, which consisted of a coat, boots, gloves, hairnet, and hardhat.  Id. ¶ 9.  Mateo typically worked no fewer than ten hours per day on Monday through Thursday and no less than seven hours per day on Fridays.  Id. ¶ 6.  Morris was paid $9.00 per hour by check.  Id. ¶ 12.

Both Morris and Mateo maintain that during their respective periods of employment Alle employed several hundred other individuals.  Morris Decl. ¶ 6 (claiming approximately 300 other employees); Mateo Decl. ¶ 5 (claiming approximately 500 other employees).  They claim that these employees usually performed tasks similar to those performed by plaintiffs.  Morris Decl. ¶ 6; Mateo Decl. ¶ 5.

3

Morris and Mateo also claim that they received neither overtime compensation for all of the hours worked over forty each week nor an extra hour of pay when they worked over ten hours in a day.  Morris Decl. ¶¶ 14–15; Mateo Decl. ¶¶ 13–14.  They believe that defendants also failed to properly pay their co-workers for all hours worked because Morris and Mateo personally witnessed other employees working over forty hours each week and more than ten hours per day.  Morris Decl. ¶ 17; Mateo Decl. ¶ 16.

   Both also state that their respective supervisors told them to punch in after they put on their uniform and to punch out before taking off their uniform.  Morris Decl. ¶ 12; Mateo Decl. ¶ 11.  As a result, Morris and Mateo claim they were never paid for the time they spent putting on and taking off their uniforms.  Morris Decl. ¶¶ 10–11, 16 (claiming approximately thirty minutes each day spent putting on and taking off uniform); Mateo Decl. ¶¶ 9–10, 15 (claiming approximately sixty minutes spent each day putting on and taking off uniform).  They each witnessed other workers put on their uniforms before punching in and taking off their uniforms after punching out.  Morris Decl. ¶¶ 10–11 (claiming he personally witnessed no fewer than thirty to forty other workers follow this practice); Mateo Decl. ¶¶ 9–10, 15 (claiming he personally witnessed no fewer than thirty workers follow this practice).

Morris and Mateo further maintain that many of Alle's employees were foreign-born, non-English speaking immigrants, who are unfamiliar with the American legal system and might be afraid to pursue claims for unpaid wages on their own.  Morris Decl. ¶ 18; Mateo Decl. ¶ 17.  They also note that many employees worked at Alle for only a short period of time.  Morris Decl. ¶ 18; Mateo Decl. ¶ 17.

Additionally, four employees, who have opted into the FLSA collective action, Effrain Irizarry, David Benito, Kenneth Patterson, and Robert Carl Lanza (collectively "opt-in

declarants"), have submitted declarations claiming that they were not paid their proper wages. Decl. of Effrain Irizarry ("Irizarry Decl.") ¶ 3, Lusher Decl. Ex. 3; Decl. of David Benito ("Benito Decl.") ¶ 3, Lusher Decl. Ex. 4; Decl. of Kenneth Patterson ("Patterson Decl.") ¶ 3, Lusher Decl. Ex. 5; Decl. of Robert Carl Lanza ("Lanza Decl.") ¶ 3, Lusher Decl. Ex. 6.  These opt-in declarants worked in different departments, earned different hourly wages, and worked different hours.  See Irizarry Decl. ¶¶ 5, 7, 15; Benito Decl. ¶¶ 5, 8, 17; Patterson Decl. ¶¶ 6, 8, 16, 17; Lanza Decl. ¶¶ 5, 8, 16.  Each opt-declarant was required to wear a uniform.  Irizarry Decl. ¶ 10 (apron, boots, helmet, hairnet, and gloves); Benito Decl. ¶ 12 (apron, boots, hardhat, hairnet, gloves, and coat); Patterson Decl. ¶ 11 (boots, gloves, freezer suit, and back brace); Lanza Decl. ¶ 11 (boots, hardhat, hairnet, gloves, and coat).  However, they each claim that their supervisors told them to punch in after they put on their uniform and to punch out before taking off their uniform and that, as a result, they were not paid for the time spent putting on or taking off their uniform.  Irizarry Decl. ¶¶ 10, 12–14; Benito Decl. ¶¶ 12, 14–16; Patterson Decl. ¶¶ 11, 13–15; Lanza Decl. ¶¶ 11, 13–15.  Each of these opt-in declarants personally witnessed other workers following the same practice.  Irizarry Decl. ¶ 11; Benito Decl. ¶ 13; Patterson Decl. ¶ 12; Lanza Decl. ¶ 12.

Further, each opt-in declarant claims that he was not paid an additional hour of pay when he worked over ten hours per day.  Irizarry Decl. ¶ 16; Benito Decl. ¶18; Patterson Decl. ¶ 18; Lanza Decl. ¶ 18.  Opt-in declarant Lanza also claims that he was not paid overtime for all of the hours he worked over forty each week.  Lanza Decl. ¶ 17.  Like Morris and Mateo, each opt-in declarant alleges that many of the Alle employees were foreign-born, non-English speaking immigrants who might be afraid to sue, and that many employees worked at Alle for only a short period of time.  Irizarry Decl. ¶ 17; Benito Decl. ¶ 19; Patterson Decl. ¶ 19; Lanza Decl. ¶ 19.

In addition to these declarations, plaintiffs have submitted employee time cards for named plaintiffs Mateo and Pierre, opt-in declarants Irizarry and Benito, and several other opt-in plaintiffs.  Lusher Decl. Exs. 9–15; Reply Decl. of LaDonna Lusher in Supp. Pls.' Mot Class Certification ("Lusher Reply Decl.") Exs. 1–3.  The time cards, which each cover a week-long period, indicate when an employee punched in and out each day and the total hours the employee worked.  See e.g., Mateo Employee Time Card, Lusher Decl. Ex. 9.  The time cards also have a "punch audit summary" that records when an employee's punch in or out time has been altered. Id.  Almost every time card reflects at least one punch in time having been changed to a later time, resulting in fewer total hours for that week.  See Lusher Decl. Exs. 9–15; Lusher Reply Decl. Exs. 1–3.  Based on these alterations, plaintiffs claim that defendants illegally shaved time from the employees' time records.  Pls.' Mem. at 6.

Defendants, in response, have submitted an affidavit from Ivan Talavera, Alle's Plant Manager and Director, which is the same affidavit defendants submitted in opposition to plaintiffs' motion for conditional certification of the collective action in this case.  Aff. of Ivan Talavera ("Talavera Aff."), Affirm. of Jeffery A. Meyer in Opp. to Mot. Class Certification ("Meyer Affirm.") Ex. A, ECF No. 49.  In short, Talavera asserts that: (1) plaintiffs do not share common characteristics with other Alle employees because of the various departments, work duties, and job descriptions at Alle, id. ¶ 9; (2) the only clothes Alle employees put on prior to punching in are boots, a hardhat, and a coat, which takes one and a half minutes to put on, and there is no policy that they must put these clothes on before punching in, id. ¶¶ 11, 13, 20; (3) Alle employees are paid at the proper overtime rate when they work in excess of forty hours per week, id. ¶¶ 29–30; and (4) adjustment to punch in times "may be made from time to time" when it was "impossible for an employee to work" on a production line before the line started at

6

a specific time, when employees punched in for co-workers, or when employees refused to punch in or out for a shift, id. ¶ 31.

Defendants have also submitted disciplinary reports for Mateo and Pierre, Meyer Affirm. Exs. E, G, and evidence regarding recent union activity at Alle, id. Exs. B–H.  In November 2008, the National Labor Relations Board (the "NLRB") held an election to certify the Local 342 United Food and Commercial Workers (the "Union") as the exclusive collective bargaining representative of Alle's employees.  Id. ¶¶ 6, 8; NLRB Tally, Meyer Affirm. Ex. C.  The result of the election was in favor of Alle, with a majority of Alle's employees voting against Union representation.  See NLRB Tally.  Mateo and Pierre not only supported the Union but utilized Union representation in unfair labor practice charges against Alle.  See Meyer Affirm. ¶¶ 10–14; id. Exs. D, F.  Specifically, the Union, on behalf of Mateo and Pierre, alleged that both employees were terminated due to supporting the Union and engaging in Union activity.  Meyer Affirm. ¶¶ 10, 13; id. Exs. D, F.  Defendants point to the disciplinary reports against Mateo and Pierre to show that both were terminated because of their disciplinary records.  Meyer Affirm. ¶¶ 11, 13.

Defendants did not submit any time cards or payroll records.  See Meyer Affirm. Exs. A–I.

## 2.  *Procedural History*

On September 8, 2009, plaintiffs moved to conditionally certify a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), which the Honorable Sandra L. Townes referred to me for decision.  By Order dated December 22, 2009, I granted plaintiffs' motion to conditionally certify a collective action finding that plaintiffs had demonstrated that they were similarly situated by alleging that: "(1) a large number of Alle employees worked over 40 hours

a week; (2) Alle routinely did not pay plaintiffs for work performed in excess of 40 hours; (3) a majority of Alle employees originate from foreign countries; and (4) defendants did not assert individualized defenses against specific class members."  Dec. 22, 2009 Order at 4.  By the same Order, I authorized plaintiffs' proposed notice to putative class members.  Id. at 6.

Pursuant to my Publication Order dated January 5, 2010, defendants furnished a list containing the names and addresses of 2,000 individuals employed by Alle from December 3, 2002 through the present.  Jan. 5, 2010 Order ¶ 2, ECF No. 23; Lusher Decl. ¶ 2 n. 1.  Plaintiffs subsequently sent notice of the collective action to these individuals.  Lusher Decl. ¶ 2 n. 1; Pls.' Mem. 7 n. 4.  Seventy-eight of the 2,000 potential claimants opted into the collective action (the "opt-ins" or "opt-in plaintiffs").  See Notice of Consent Filings, ECF No. 25; Consent to Class Action, ECF No. 26.

On September 13, 2011, during settlement negotiations, the parties consented to my conducting all further proceedings in this case.[1]  Consent to Magistrate Judge, ECF No. 32.

Recently, on September 19, 2012, defendants served offers of judgment on the named plaintiffs and opt-ins.  Meyer Affirm. ¶ 4.  As of October 19, 2012, thirty-three opt-in plaintiffs, including Benito and Irizarry, accepted defendants' offer.  Id. ¶ 5.

Plaintiffs now move for class certification, pursuant to Federal Rule of Civil Procedure 23, of a class of Alle employees based on plaintiffs' state law claims.  Plaintiffs' proposed class consists of:

> All individuals who performed work as food service employees
> and in other related trades for Defendant Alle Processing Corp.
> ("ALLE") at their food processing facility in Maspeth, New York
> from December 3, 2005 through the present (the "Class").

---

[1] Both plaintiffs' notice of motion and their proposed notice for potential class members incorrectly state that this case is before the Honorable Sandra L. Townes.  Notice of Mot., ECF No. 52; Proposed Notice, Lusher Decl. Ex. 7. As discussed infra, plaintiffs are directed to revise their proposed order accordingly.

> Corporate officers, shareholders, directors, and administrative employees are not part of the defined class.

Lusher Decl. ¶ 1.

## DISCUSSION

To certify the class requested by plaintiffs, the Court must find that plaintiffs have satisfied the four prerequisites of Federal Rule of Civil Procedure 23(a) and one of the three prerequisites of Rule 23(b).  Garcia v. Pancho Villa's of Huntington Village, Inc., 281 F.R.D. 100, 104 (E.D.N.Y. 2011) (citing Fed. R. Civ. P. 23).

The requirements of Rule 23(a) are as follows: (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses or the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  Further, although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition."  Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D. 385, 393 (N.D.N.Y. 2011) (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 30 (2d Cir. 2006)).

The relevant subsection of Rule 23(b) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Plaintiffs bear the burden of establishing each of these requirements.  Garcia, 281 F.R.D. at 104 (citing Lee v. ABC Carpet & Home, 236 F.R.D. 193, 202 (S.D.N.Y. 2006)).  While courts have wide discretion in deciding whether to certify a class, id. at 104, they still must undertake a "rigorous analysis" to ensure that the requirements of Rule 23 have been satisfied, Wal-Mart

9

Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011) (quoting Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 161 (1982)).  Additionally, while courts "should not assess any aspect of the merits unrelated to a Rule 23 requirement," certification "can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established."  In re Initial Pub., 471 F.3d at 41.

Courts in this Circuit have displayed "a preference for granting rather than denying class certification."  Gortat v. Capala Bros., ("Gortat I"), 257 F.R.D. 353, 361 (E.D.N.Y. 2009) (citing Cortigiano v. Oceanview Manor Home for Adults, 227 F.R.D. 194, 203 (E.D.N.Y. 2005)); see Marisol A. v. Giuliani, 126 F.3d 372, 277 (2d Cir. 1997).  Moreover, "where a collective action under the FLSA that is based on the same set of facts has been approved there is an inclination to grant class certification of state labor law claims."  Garcia, 281 F.R.D. at 104–05 (quoting Lee, 236 F.R.D. at 202–03); cf. Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together.") (collecting cases).

## A.  A Rule 23 Class Action is Appropriate Under New York Labor Law

As an initial matter, defendants contend that Rule 23 class certification should be denied because New York Labor Law ("NYLL") does not permit class actions seeking liquidated damages.  Defs.' Mem. in Opp'n to Mot. Class Certification ("Defs.' Mem.") at 6 (citing Foster v. Food Emporium, No. 99–CV–3860, 2000 WL 1737858, at *3 (S.D.N.Y. Apr. 26, 2000)), ECF No. 48.  Section 901(b) of New York's Civil Practice Law and Rules ("NYCPLR") precludes the use of the class action mechanism where the underlying statute provides for a penalty of

liquidated damages.  Here, plaintiffs' NYLL claims provide for liquidated damages.  See N.Y. Lab. L. §§ 198, 663.

In response, plaintiffs argue that "[c]ourts in this circuit have held that New York law allows plaintiffs to waive their liquidated damages claim for overtime wage class actions 'as long as putative class members are given the opportunity to opt out of the class in order to pursue their own liquidated damages claims.'"  Pls.' Reply at 10 (quoting Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 373–74 (S.D.N.Y. 2007)).  Plaintiffs, however, do not need to waive their claims to liquidated damages in light of the Supreme Court's decision in Shady Grove Orthopedics Assocs. P.A., v. Allstate Ins. Co., 559 U.S. 393, 130 S.Ct. 1431 (2010)—a case  of which plaintiffs are apparently unaware.  In Shady Grove, the Court held that section 901(b) of NYCPLR does not apply to state law class actions filed in federal court.  Id. at 1436–42.  In turn, "plaintiffs alleging claims under sections 198 and 663 of [NYLL] may now seek liquidated damages in federal court."  Gortat v. Capala Bros., Inc., ("Gortat II"), No. 07–CV–3629, 2011 WL 6945186, at * 9 (E.D.N.Y. Dec. 30, 2011) (granting motion to amend complaint to include claim for liquidated damages in class action suit under NYLL); see Pefanis v. Westway Diner, Inc., No. 08–CV–002, 2010 WL 3564426, at *7 (S.D.N.Y. Sept. 7, 2010) (finding post-Shady Grove "plaintiffs may now seek liquidated damages authorized by NYLL as part of a Rule 23 class action in federal court").

Accordingly, the Court finds that class certification of plaintiffs' NYLL claims, including those for liquidated damages, is appropriate.

**B.  Rule 23(a) Prerequisites**

      *1.  Ascertainability*

Although it is "not explicitly spelled out in Rule 23, courts have added an 'implied requirement of ascertainability' with respect to the class definition." Hamelin, 274 F.R.D. at 393.  Specifically, courts have required that "a class be identifiable before it may be properly certified." Id. at 396 (citing Dunnigan v. Metro. Life Ins. Co., 214 F.R.D. 125, 135 (S.D.N.Y. 2003)).  An identifiable class need not be ascertained prior to certification, "but a court must determine that the class will be ascertainable at some stage of the proceedings." Id. (citing Noble v. 93 Univ. Pl. Corp., 224 F.R.D. 330, 338 (S.D.N.Y. 2004)).  Ascertainability exists when class members can be identified "by reference to objective criteria." Guan Ming Lin v. Benihana New York Corp., No. 10–CV–1335, 2012 WL 7620734, at *11 (S.D.N.Y. Oct. 23, 2012); Hamelin, 274 F.R.D. at 396.

Defendants argue that the "class members are 'impossible to identify prior to individualized fact-finding and litigation[,]'" Defs.' Mem. at 8 (quoting Crosby v. Social Security Admin., 796 F.2d 576, 580 (1st Cir. 1986)),  especially because a "significant number of Plaintiffs have already accepted Defendants' Offer of Judgment," id.[2]  Although plaintiffs do not appear to address defendants' ascertainability argument, the Court still finds that the argument is without merit.

Here, defendants have already provided plaintiffs with a list of 2,000 individuals who have worked for defendants since December 5, 2002.  Whether an individual from this list fits into the proposed class is a factual question that rests on objective criteria such as job

---

[2] Defendants mistakenly argue that plaintiffs' proposed class does not meet the numerosity prerequisite because it is not readily ascertainable.  Defs.' Mem. at 8.  Because ascertainability is not a consideration in determining numerosity, the Court will construe defendants' argument to be that plaintiffs failed to meet the implied requirement of ascertainability.

descriptions, dates of employment, and whether an individual has accepted an offer of judgment. Moreover, this factual question can be easily answered through documentation, such as the employee time cards, which include an employee's date of hire, job title, and department.  See Guan Ming Lin, 2012 WL 7620734, at *12 (finding class ascertainable where "membership in the class can be ascertained by objective documentation, such as defendants' payroll records and wage statements").

Accordingly, plaintiffs' proposed class satisfies the implied ascertainability requirement.

2.  *Numerosity*

Rule 23(a)(1) permits a class action only when the "class is so numerous that joinder of all members is impracticable."  In the Second Circuit, courts have presumed numerosity when a class consists of forty or more class members.  Garcia, 281 F.R.D. at 105 (citing Lee, 236 F.R.D. at 203); see also Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Further, "courts are empowered to make common sense assumptions to support a finding of numerosity."  Nicholson v. Williams, 205 F.R.D. 92, 98 (E.D.N.Y. 2001) (internal quotation marks omitted); see Hamelin, 274 F.R.D. at 394 ("[P]laintiffs may rely on reasonable inferences drawn from the available facts to estimate the size of the class.").

Defendants, having argued that plaintiffs' class is not ascertainable, do not make any additional arguments regarding numerosity.  See Defs.' Opp. at 8.  Plaintiffs, however, argue that they have satisfied the numerosity requirement because: (1) there are at least 2,000 individuals who have worked at the plant, seventy-eight of whom have already opted in to the FLSA collective action; and (2) named plaintiffs and opt-in declarants state in their sworn affirmations that they worked with no fewer than 200 to 400 employees at the plant.  Pls.' Mem. at 10; Pls.' Reply at 4.

13

Subtracting the thirty-three opt-in plaintiffs who accepted defendants' offers of judgment, plaintiffs' proposed class is already comprised of over forty potential class members.  Further, considering the large pool of employees from defendants' list,[3] the number of opt-in plaintiffs, and the plaintiffs' affirmations, it is reasonable to infer that the proposed class is significantly larger than forty and, therefore, sufficiently numerous.  See Hamelin, 274 F.R.D. at 394.

Further, any doubt that may arise from the small percentage of opt-ins in this case is overcome by plaintiffs' contention that many proposed class members did not opt in because the class is largely comprised of foreign-born, non-English-speaking employees, who are unfamiliar with the American legal system and fear losing their employment.  Pls.' Reply at 4; see Jankowski v. Castaldi, No. 01–CV–164, 2006 WL 118973, at *2 (E.D.N.Y. Jan. 13, 2006) (finding numerosity under Rule 23(a)(1) where only forty employees out of pool of at least 450 putative class members opted in to FLSA collective action because majority of class was undocumented immigrants afraid of losing their jobs); Noble, 224 F.R.D. at 342; Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

Accordingly, plaintiffs have satisfied Rule 23(a)(1)'s numerosity requirement.

### 3.  Commonality and Typicality

The commonality and typicality requirements "both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately represented in their absence."  Falcon, 457 U.S.

---

[3] As mentioned above, defendants previously provided plaintiffs with a list of Alle employees for the FLSA collective action notice—the list included the names and addresses of 2,000 individuals who were employed by Alle from December 3, 2002 onward.  Jan. 5 2010 Order ¶ 2.  The proposed class in the instant motion includes employees from December 3, 2005 through the present.  Lusher Decl. ¶ 1.  Because the previously provided list covers a longer period of time it contains a larger number of individuals than those eligible for the instant proposed class.  Regardless of this difference, the Court notes that the list's sheer length still supports a finding of numerosity.

at 157 n.13.   As a result, the commonality and typicality requirements tend to merge into one another, and similar considerations "animate" the analysis of both Rule 23(a)(2) and Rule 23(a)(3).  Marisol A., 126 F.3d at 376 (citing Falcon, 457 U.S. at 157 n.13).

The commonality requirement under Rule 23(a)(2) is met when there are "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "Commonality does not mean that all issues must be identical as to each member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment."  Garcia, 281 F.R.D. at 105 (quoting Damassia, 250 F.R.D. at 156) (internal quotation marks omitted).  As a result, a single question common to all class members can be sufficient to satisfy this requirement, "if the common question is at the core of the cause of action alleged."  Guzman v. VLM, Inc., No. 07–CV–1126, 2008 WL 597186, at *6 (E.D.N.Y. Mar. 2, 2008) (internal quotation marks omitted); Garcia, 281 F.R.D. at 105 ("Courts have liberally construed the commonality requirement to mandate a minimum of one issue common to all class members.").

Similarly, typicality under Rule 23(a)(3) requires that the claims or defenses of the class representatives be typical of those of the class.  Marisol A., 126 F.3d at 376; Garcia, 281 F.R.D. at 106 (citing Fed. R. Civ. P. 23(a)(3)).  This requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove defendant's liability."  Marisol A., 126 F.3d at 376; see Garcia, 281 F.R.D. at 106.

In light of the Supreme Court's recent decision in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011), the analysis of commonality and typicality has recently become stricter.  See Flores v. Anjost Corp., 284 F.R.D. 112, 125 (S.D.N.Y. 2012).  In Dukes, the Supreme Court explained that in order for claims to be "productively litigated at once" they must depend on a

15

"common contention . . . of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." 131 S.Ct. at 2551.

Even so, "the weight of authority rejects the argument that <u>Dukes</u> bars certification in wage and hour cases." <u>Morris v. Affinity Health Plan, Inc.</u>, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (collecting cases). In wage and hour cases, courts in this Circuit have "focused on whether the employer had company-wide wage policies that injured the proposed class." <u>Flores</u>, 284 F.R.D. at 275 (citing <u>Youngblood v. Family Dollar Stores, Inc.</u>, No. 09–CV–3176, 2011 WL 4597555, at *4 (S.D.N.Y. Oct. 4, 2011)); <u>see</u> <u>e.g.</u>, <u>Poplawski v. Metroplex on the Atl.</u>, LLC, No. 11–CV–3765, 2012 WL 1107711 at *7 (E.D.N.Y. Apr. 2, 2011). Moreover, "claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." <u>Flores</u>, 284 F.R.D. at 275 (quoting <u>Espinoza v. 953 Assocs. LLC</u>, 280 F.R.D. 113, 127 (S.D.N.Y. 2011) (collecting cases)).

Plaintiffs argue that their claims raise a number of questions of law and fact common to all members of the proposed class, including, <u>inter alia</u>, questions regarding whether defendants failed to pay (1) minimum wages for all hours worked, (2) overtime compensation for all hours worked over forty hours each week, and (3) spread of hours compensation after ten hours worked per day. Pls.' Mem. at 11–13. Further, plaintiffs argue that the claims of both the named plaintiffs and the proposed class members "clearly arise from the same conduct of Defendants and are based on the same legal theory—that Defendants breached their statutory obligations to pay or to ensure payment . . . of required wages." Pls.' Reply at 5.

16

Defendants, on the other hand, argue that because "various Plaintiffs performed different jobs, [had] different job responsibilities, worked different hours, were subject to different pay rates and were otherwise treated differently by Alle[,]" each plaintiff's claim is "unique" and requires an "individual case-by-case analysis[,]" which defeats the purpose of class certification. Defs.' Opp. at 9.

The Court finds that plaintiffs have satisfied the commonality and typicality requirements. The named plaintiffs' claims and the proposed class members' claims arise from the same course of conduct (defendants' practice and policy of failing to pay wages and overtime), raise common issues of law and fact (<u>inter</u> <u>alia</u>, whether defendants' improperly shaved time from records, refused to pay for time spent donning and doffing uniforms, failed to pay time and half for all hours worked over forty, and failed to pay spread of hours wages), and are based on the same legal theories (violations of NYLL).

More importantly, the factual variations cited by defendants are not sufficient to preclude class certification. <u>See</u> <u>Iglesias-Mendoza</u>, 239 F.R.D. at 371 ("[C]ourts have found the requirement of commonality and typicality satisfied despite the existence of . . . factual variations.") (collecting cases); <u>Robidoux v. Celani</u>, 987 F.2d 931, 936–37 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims."). Differences among class members as to the number of hours worked, the type of work performed, and the amount of pay received "concern the amount of damages to which any individual [class member] might be entitled if and when liability is found, not the amenability of plaintiffs' claims to the class action form." <u>Flores</u>, 284 F.R.D. at 127 (quoting <u>Iglesias-Mendoza</u>, 239 F.R.D. at 371); <u>see</u>

Ansoumana, 201 F.R.D. at 86 (finding differences among plaintiffs as to number of hours worked, type of work, and amount of pay related to amount of damages); Noble, 224 F.R.D. at 343 (same).

Defendants make two additional arguments, both of which are insufficient to defeat commonality and typicality here. First, defendants argue that certification is improper because donning and doffing uniforms is not a compensable activity under the FLSA and, even if it were, the time spent donning and doffing in this case is de minimis and therefore not compensable. Defs.' Mem. at 9–10. In response, plaintiffs assert that defendants' argument relates to the merits of the case, which are not at issue on a motion for class certification. Pls.' Reply at 6.

Whether time spent donning and doffing uniforms is compensable under the FLSA is irrelevant to the instant motion, which is to certify a class based on plaintiffs' state law wage claims, not plaintiffs' FLSA claim. Further, a determination of whether this time is compensable under New York State law would require the Court to make a decision on the merits of the underlying action. Courts, however, must undertake a "rigorous analysis" to determine whether plaintiffs have met each requirement of Rule 23, not whether there has been a violation of law. See Niemiec v. Ann Bendick Realty, No. 04–CV–897, 2007 WL 5157027, at *5 (E.D.N.Y. Apr. 23, 2008).

As a result, courts are discouraged from deciding issues on the merits "unless they are related to, or implicated by, the determination of whether the Rule 23 prerequisites have been satisfied." 953 Assocs. LLC, 280 F.R.D. at 124 (citing In re Initial Pub., 471 F.3d at 41). The question of whether donning and doffing time is compensable here does not need to be resolved in order for the Court to determine commonality, typicality, or any other prerequisite under Rule 23(a). In fact, this question helps establish commonality by raising issues of both law and fact

18

that are common to both plaintiffs and the proposed class members—for example, whether defendants had a policy of refusing to compensate employees for time spent donning and doffing uniforms and whether this policy violates NYLL.

Second, defendants argue that the proposed class lacks commonality and typicality because a large majority of the proposed class members earned over the minimum wage, and employees who earn over the minimum wage are not entitled to spread of hours compensation. Defs.' Opp. at 11.  Defendants are correct that New York law does not ensure an additional hour of compensation for those employees who earn over the minimum wage.[4]  See Flores, 284 F.R.D. at 118–19 (citing N.Y. Comp. Codes R. & Regs. tit. 12, §142–2.4(a); Espinoza v. Delgado Travel Agency, Inc., No. 05–CV–6917, 2007 WL 656271, at *2 (S.D.N.Y. Mar. 2, 2007)).

However, the presence of both minimum wage and above-minimum wage employees in the proposed class is insufficient to defeat commonality and typicality.  The common question of whether defendants had a policy of failing to pay spread of hours compensation is amenable to class resolution.  There may be questions regarding whether plaintiffs or individual proposed class members are entitled to spread of hours compensation for all or part of their employment. "In this, spread of hours wages are not so unlike overtime wages: an employer's liability is not ascertained on a paycheck to paycheck basis—damages are."  Flores, 284 F.R.D. at 127. Although, the spread of hours compensation to which an individual is entitled will require an inquiry into the number of hours the individual worked and his rate of pay, such damages-related inquiries are "mechanical" and do "not threaten to overwhelm the litigation with individual factual determinations."  Id. at 126–27 (finding difference in wages among class members

---

[4] The exception to this rule, which applies to restaurant and hotel employees, does not apply here.  See Flores, 284 F.R.D. at 119 (citing N.Y. Comp.  Codes R. & Regs. tit. 12, § 146-1.6(d)).

insufficient to defeat typicality in spread of hours claim subclass); see also Morangelli v. Chemed Corp., No. 10–CV–876, 2013 WL 432571, at *23 (E.D.N.Y. Feb. 4, 2013) ("The fact that some [plaintiffs] were not affected by the purported time-shaving practice or were affected to different extents does not undermine plaintiffs' ability to establish liability . . . through generalized proof.").[5]

Accordingly, plaintiffs have satisfied the commonality and typicality requirements.

### 4. Adequacy

Rule 23(a)(4) requires plaintiffs to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." To satisfy this prerequisite, "plaintiffs must show that (1) the class representatives' interests are not 'antagonistic to the interest of other members of the class' and (2) that class counsel is 'qualified, experienced and able to conduct the litigation.'" Garcia, 281 F.R.D. at 107; see Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000).

Defendants contend that plaintiffs fail to satisfy the first of these two prongs. First, defendants argue that named plaintiffs have not provided reliable and accurate information but, rather, have "provided different information regarding their job responsibilities, work hours, pay methods, and even the equipment they were required to wear." Defs.' Mem. at 12. Although "[i]t is true that class representatives with credibility so poor as to materially impair the plaintiffs' case at trial may be inadequate for that reason," Guzman, 2008 WL 597186, at *7 (citing Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998)), the record here does not support such a finding. The factual differences between named plaintiffs' experiences do not

---

[5] The Court notes that although named plaintiff Rafael Mateo appears to have been paid above the minimum wage at the time of his employment, see N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1, this "does not preclude a finding of typicality because the claims of the named plaintiffs do not need to be identical with those of each class member." Hamelin, 274 F.R.D. at 395 (finding typicality present even where one named plaintiff did not make common claim); see Marriott v. Cnty. of Montgomery, 227 F.R.D. 159, 172 (N.D.N.Y. 2005).

reflect a lack of credibility or reliability, but instead demonstrate that defendants' alleged improper payment policies may have affected a wide range of employees.

Second, defendants argue that named plaintiffs have "evidenced an undisputable Union motive to continue litigation against Alle that is not shared by a large majority of Alle's employees." Defs.' Mem. at 12. As stated above, the majority of Alle's employees voted against Union representation in a November 2008 election. Mateo and Pierre, in contrast, not only supported the Union but utilized Union representation in unfair labor practice charges against Alle. As a result, defendants suggest that inclusion of Union supporters and Union opponents in the same proposed class creates a conflict of interest, especially where "[named plaintiffs] and their Union may wish to pursue otherwise baseless claims against Alle for their personal interest." Defs.' Mem. at 12. However, "a vote to decline <u>general</u> union representation is not proof that the union and all workers have conflicting interests concerning a lawsuit to redress <u>specific</u> pay practice grievances." <u>Gutierrez v. Kovacevich "5" Farms</u>, No. 04–CV–5515, 2004 WL 3745224, at *7 (E.D. Cal. Dec. 2, 2004) (emphasis in original). Named plaintiffs' claims may be for "personal interest," but other Alle employees also share these claims, as evidenced by the declarations of opt-in plaintiffs David Benito, Effrain Irizarry, Kenneth Patterson, and Robert Carl Lanza, and the fact that seventy-eight employees opted in to the plaintiffs' FLSA collective action. Defendants have not shown that any Alle employees object to this lawsuit because of the named plaintiffs' Union connection. Moreover, any Alle employees that do object may opt out of participation in the class.

21

Further, the named plaintiffs' adequacy is bolstered by the finding that their claims are typical of the class.[6]  Garcia, 281 F.R.D. at 107 (quoting Damassia, 250 F.R.D. at 158) (finding typicality "is strong evidence that [named plaintiffs'] interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class").

With respect to the qualifications and experience of plaintiffs' counsel, Virginia and Ambinder LLP, the Court finds that they are experienced labor and employment litigators who have successfully represented employees in numerous wage and hour class and collective action lawsuits.  See Lusher Decl. ¶ 3 (collecting cases).  Defendants do not challenge the qualifications of plaintiffs' counsel.

Accordingly, plaintiffs have demonstrated adequacy sufficient to satisfy the requirements of Rule 23(a)(4).

## C.  Rule 23(b)(3) Prerequisites

### 1.  Predominance

The predominance element of Rule 23(b)(3) requires plaintiffs to show that common questions "predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  A court's inquiry into this element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and is similar to the analysis of the commonality and typicality requirements.  Achem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997); see Niemiec, 2007 WL 5157027, at * 12.  "To meet the predominance requirement, a plaintiff must establish that the issues that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."  In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 132–33 (2d Cir. 2001).  Further,

---

[6] Named plaintiff Pierre's failure to submit a declaration in support of the instant motion is of no consequence given the declarations from named plaintiffs Morris and Mateo and the opt-in declarants.  See 953 Assocs. LLC, 280 F.R.D. at 128.

predominance is satisfied where, as here, the "central issue" is whether defendants had a "uniform policy or practice" of denying wages for all hours worked, overtime wages, and spread of hours compensation.  Garcia, 281 F.R.D. at 108 (quoting Guzman, 2008 WL 597186, at *8).

Defendants maintain that because "liability cannot be established on a class-wide basis (due to the disparate nature of the defenses and exemptions which inextricably affect Plaintiffs and the putative class)[,]" plaintiffs have failed to establish predominance.  Defs.' Mem. at 13. Defendants further contend that certification is inappropriate "because the exemption analysis required to resolve Plaintiffs' NYLL claims is dependent upon an individualized inquiry into each employee's actual job duties, work department and necessary 'uniforms[.]'"  Id. at 15. Although defendants do not name specific defenses and exemptions, they appear to suggest that some employees will not be entitled to additional wages if their uniforms were minimal or they spent a limited amount of time donning and doffing such uniforms.[7]  See id.  Notably, defendants fail to make any arguments regarding plaintiffs' time-shaving claims, overtime wages claims, and spread of hours compensation claims in their predominance discussion.  See Defs.' Mem. at 13–16.

Defendants' argument, in essence, amounts to a list of factors that could affect the amount of time Alle employees spent donning and doffing uniforms, and thus the wages to which they would be entitled—i.e. damages issues, not liability issues.  Although determinations as to damages will require individualized inquiries here, such inquiries will not bar certification because common liability issues otherwise predominate.  Noble, 224 F.R.D. at 345; see Niemiec, 2007 WL 5157027, at *12 (finding issues raised by plaintiffs' failure to pay overtime claim

---

[7] This is not an exemption issue as it is typically understood in the context of wage and hour class and collective actions.  For example, an employee is exempt from receiving overtime wages under NYLL if he was "employed in a bona fide executive, administrative, or professional capacity," pursuant to section 13(a)(1) of the FLSA.  N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2.

subject to generalized proof and "predominate over individual issues such as the alleged exempt status of the superintendent class members or the swapping of weekend schedules by class members").

Further, while plaintiffs and opt-in declarants have consistently listed similar uniform items (i.e. coat/suit/jacket, boots, gloves, hairnet, and hardhat), defendants have failed to provide any evidence of employees who may have different items or no uniform at all.  As a result, there is no merit to defendants' suggestion that class certification is inappropriate because proposed class members donned different uniforms and spent varying amounts of time donning such uniforms.  See Trief v. Dun & Bradstreet Corp., 144 F.R.D. 193, 199–200 (S.D.N.Y. 1992) ("The Court is well aware that here, as in any class action, certain defenses or proof may ultimately be required of some class members but not others.  To prohibit certification of a class on the basis of such speculation, however, would wholly negate the utility of the class action device and undermine the very policy that Rule 23 is intended to promote."); see e.g., Ford v. Townsends of Arkansas, Inc., No. 4:08–CV–509, 2010 WL 1433455, at *1, 9 (E.D. Ark. Apr. 9, 2010) (finding predominance satisfied where class members, whose uniforms varied by department and individual, alleged "that they were victims of common policy against compensating employees for all time spent donning, doffing, and related activities").

Although plaintiffs represent to the Court that they will utilize common evidence to establish liability, they do not specify such evidence.  Pls.' Reply at 10.  Despite plaintiffs' lack of detail, the Court finds that a determination on the legality or illegality of defendants' practices is susceptible to common proof, thus satisfying the predominance requirement.  See Morangelli, 2013 WL 432571, at *23 ("[T]he key is whether liability issues are susceptible to common proof.  Differences between plaintiffs may often interfere with common proof but where, as here,

24

documentary evidence allows for class-wide determinations of these issues, certification remains appropriate."); cf. Ford, 2010 WL 1433455, at *9 (finding of predominance further supported by plaintiffs' allegation that common evidence will be used to prove defendants' policy violated state law).  Mainly, documentary evidence, such as the employee time cards, could be used to help resolve issues of defendants' liability on plaintiff's time-shaving, overtime, and spread of hours claims.

The common questions of liability predominate over individual inquiries here.  See e.g., 953 Assocs. LLC, 280 F.R.D. at 127–29 (finding predominance satisfied where common issues related to overtime and time alteration claims predominated over individual inquiries).

Accordingly, plaintiffs have satisfied the predominance requirement under Rule 23(b)(3).

## 2. Superiority

Rule 23(b)(3) also requires a class action "be superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  District courts in this Circuit "routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation and many potential class members are currently employed by Defendant."  Garcia, 281 F.R.D. at 108 (citing Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011) (collecting cases)); Tiro v. Public House Investments, LLC, Nos. 11–CV–7679, 11–CV–8249, 2012 WL 6053961, at *8 (S.D.N.Y. Dec. 4, 2012).

Here, the proposed class members are significantly numerous and possess relatively small individual claims.  Moreover, there is reason to believe that because many class members are currently employed by Alle and/or of foreign descent, they may fear reprisal and lack familiarity with the American legal system.  As a result, not only would a class action in the instant case

25

allow for a "more cost-efficient and fair litigation of common disputes" than individual actions, but it is likely the only device by which many of the proposed class members would obtain relief. Garcia, 281 F.R.D. at 108; see Iglesias-Mendoza, 239 F.R.D. at 373 (finding it "extremely unlikely" that proposed class members would pursue separate actions where they were "almost exclusively low-wage workers with limited resources and virtually no command of the English language or familiarity with the legal system"). Furthermore, "a class action is superior to other available methods, given that the [NYLL] claims are nearly identical to the FLSA claims, which will be tried collectively in this Court." Garcia, 281 F.R.D. at 108 (citing Alonso v. Uncle Jack's Steakhouse, Inc., No. 08–CV–7813, 2011 WL 4389636, at *5 (S.D.N.Y. Sept. 21, 2011)).

Given these considerations, it is clear that a class action is superior to other available methods for fair and efficient adjudication.[8] The interest of the class as a whole to litigate the predominant common questions substantially outweighs any interest of individual members to bring and prosecute separate actions.

Accordingly, the Court finds that plaintiffs have satisfied the superiority element of Rule 23(b)(3) and class certification is warranted.

### D. Form and Content of Proposed Notice

Plaintiffs have requested authorization of a proposed notice they included with their motion. Lusher Decl. Ex. 7. Defendants did not address plaintiffs' proposed notice in their opposition papers. See Defs.' Mem. Nevertheless, the Court directs plaintiffs to revise the proposed notice by listing the undersigned as the presiding judge. See Consent to Magistrate

---

[8] Defendants contend that a class action is not superior where, as here, absent class members would be required to waive their right to liquidated damages under NYLL. Defs.' Mem. 16–17 (citing Myers v. Hertz Corp., No. 02–CV–4325, 2007 WL 2126264, at *7 (E.D.N.Y. Jul. 24, 2007), aff'd, 624 F.R.D. 537 (2d Cir. 2010)). As previously discussed, post-Shady Grove, plaintiffs may maintain claims for liquidated damages under NYLL in a class action form in federal court. Gortat II, 2011 WL 6945186, at *9. As a result, defendants' argument is misplaced.

Judge; Lusher Decl. Ex. 7.  Further, the parties shall submit a joint proposed notice to the Court for approval "in order to ensure that the drafting and distribution of notice is timely, accurate, and informative."  Flores, 284 F.R.D. at 131.  Accordingly, plaintiffs' request for authorization of the proposed notice is denied and a revised joint proposed notice shall be submitted within fourteen days of this Order.

## CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion for class certification, pursuant to Rule 23, based on plaintiffs' state law claims.  However, plaintiffs' request for the Court to authorize their proposed form is denied.  The parties are directed to submit, within fourteen days of this Order, a jointly proposed notice including, but not limited to, the aforementioned revision of listing the undersigned as the presiding judge.

Dated: May 6, 2013
Brooklyn, New York

_____/s/_____
JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE