UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

--------------------------------------------------------------------X

KINGBORN MORRIS, RAFAEL MATEO, and
DARNELL PIERRE, on behalf of all other persons
similarly situated who were employed by ALLE
PROCESSING CORP., ALBERT WEINSTOCK,
EDWIN WEINSTOCK, SAM HOLLANDER, and
MENDEL WEINSTOCK,

**MEMORANDUM AND
ORDER**

08–CV–4874 (JMA)

Plaintiffs,

-against-

ALLE PROCESSING CORP., ALBERT WEINSTOCK,
EDWIN WEINSTOCK, SAM HOLLANDER, and
MENDEL WEINSTOCK,

Defendants.

--------------------------------------------------------------------X

A P P E A R A N C E S :

LaDonna Marie Lusher
Lloyd Robert Ambinder
Virginia & Ambinder LLP
111 Broadway, Suite 1403
New York, NY 10006
        *Attorneys for Plaintiffs*

Jon S. Brooks
Phillips, Nizer LLP
666 Fifth Avenue
New York, NY 10103

Jeffery A. Meyer
Kaufman, Dolowich, Voluck, & Gonzo, LLP
135 Crossways Park Drive, Suite 201
Woodbury, NY 11797
        *Attorneys for Defendants*

**AZRACK**, **United States Magistrate Judge:**

        Plaintiffs Kingborn Morris, Rafael Mateo, and Darnell Pierre, former employees of

defendant Alle Processing Corporation ("Alle"), have brought this class action against Alle,

Albert Weinstock, Edwin Weinstock, Sam Hollander, and Mendel Weinstock (collectively, "defendants"), alleging violations of, inter alia, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, and New York Labor Law ("NYLL") § 193, for failing to pay earned wages, overtime wages, and spread of hours compensation.

On May 6, 2013, the Court granted plaintiffs' motion to certify a class action, pursuant to Federal Rule of Civil Procedure 23, based on plaintiffs' NYLL claims ("Rule 23 Order").  Rule 23 Order at 27, ECF No. 55.

Currently before the Court is defendants' motion for an order: (1) granting defendants relief from the Rule 23 Order pursuant to Rule 60(b), (2) decertifying the Rule 23 class pursuant to Rule 23(c)(1)(C), or (3) modifying the Rule 23 Order to allow defendants to seek permission to appeal the Rule 23 Order pursuant to 28 U.S.C. § 1292(b).

For the reasons set forth below, defendants' motion is denied.

## BACKGROUND

The Court assumes familiarity with the underlying facts of this case that are detailed in the Rule 23 Order.

Section 901(b) of New York's Civil Practice Law and Rules ("CPLR") provides that "an action to recover a penalty . . . created or imposed by statute may not be maintained as a class action."  N.Y. Civ. Prac. L. R. § 901(b).  On the other hand, Rule 23, which governs the maintenance of class actions in federal court, provides no such limitation.  In Shady Grove Orthopedics, P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010), the Supreme Court concluded that Rule 23 preempts § 901(b) and, therefore, a class action based on New York law seeking statutory damages may be maintained in federal court.  Id. at 1436–42; id. at 1442–44 (plurality opinion); id. at 1455–60 (Stevens, J., concurring in part and concurring in judgment).

2

In the Rule 23 Order, the Court held that in light of the Supreme Court's decision in Shady Grove, plaintiffs did not need to waive their NYLL liquidated damages claim to maintain a Rule 23 class action.  Rule 23 Order at 11.

On June 4, 2013, defendants requested a pre-motion conference seeking to move for relief from the Rule 23 Order pursuant to Federal Rule of Civil Procedure 60(b) or, alternatively, for an amendment to the Rule 23 Order permitting defendants to seek leave to appeal pursuant to 28 U.S.C. § 1292(b).  Defs.' Ltr. Mot. for Pre-Mot. Conf. ("Defs.' Pre-Mot. Ltr.") at 1, ECF No. 57.  Specifically, defendants argued that because the Supreme Court expressly limited its holding in Shady Grove to cases of diversity jurisdiction, "neither the holding nor rationale of Shady Grove applies where, as here, a District Court lacks an independent basis to exercise jurisdiction over the NYLL claims."  Id. at 2.

On June 27, 2013, the Court denied defendants' request for a pre-motion conference.  June 27, 2013 Order ("June 27 Order"), ECF No. 61.  In this Order, the Court explained that, post-Shady Grove, courts in this Circuit, while exercising supplemental jurisdiction, have "consistently allowed plaintiffs to amend their pleadings to include claims for liquidated damages under sections 198 and 663 of the NYLL that were previously barred by section 901(b)."  Id. at 2–3.  Accordingly, the Court found that both Shady Grove and the cases applying Shady Grove supported the Rule 23 Order.  Id. at 3–4.  Also in this Order, the Court directed the parties to submit a revised class notice.[1]  Id. at 4.

_____

[1] On May 20, 2013, plaintiffs filed a letter motion for approval of the revised notice, which included redefining the class to include food service employees who have worked for Alle from December 3, 2002, rather than December 3, 2005, through the present (because NYLL allows claims to be brought six years from the filing of the complaint).  See Pls.' Notice Ltr., ECF No. 56.  Defendants consented to this request.  Id.  Defendants, however, now argue that "to redefine a class, Plaintiffs must move to alter or amend the [Rule 23] Order."  Defs.' Mem. of L. in Supp. of Mot. ("Defs.' Mem.") at 6 n.10, ECF No. 65.  In response to plaintiffs' argument that defendants already consented to this request, Pls.' Mem. of L. in Opp'n Defs.' Mot. ("Pls.' Opp'n") at 4 n.2, ECF No. 66, defendants argue that "[e]ven if Defendants' consent arguably estops them from opposing a motion to modify the class definition in the [Rule 23] Order, such a motion is still required."  Defs.' Reply Mem. of L. in Supp. of Mot. ("Defs.' Reply") at 6

On June 27, 2013, defendants filed a letter requesting the Court (1) withdraw the June 27 Order, (2) establish a briefing schedule for defendants' proposed motion for relief, and (3) suspend the deadline to file the revised class notice during the pendency of defendants' proposed motion. Defs.' Ltr. at 4, ECF No. 62.

On June 28, 2013, the Court denied defendants' request for the Court to withdraw the June 27 Order and granted their request for a briefing schedule on the instant motion. For the reasons outlined in the June 27 Order, the Court warned defendants that they were at risk of violating Rule 11 and incurring sanctions if they failed to present a non-frivolous argument.

On July 9, 2013, defendants filed the instant motion. Defs.' Notice of Mot., ECF No. 63.

Defendants proffer two arguments in support of their motion. First, defendants maintain that the holding of Shady Grove does not apply where, as here, "the Court lacks original subject matter jurisdiction over Plaintiff's NYLL claims, but instead exercises mere supplemental jurisdiction over them" (the "First Argument"). Defs.' Mem. at 12. Second, defendants argue that the conflict between § 901(b) and Rule 23, which the Supreme Court describes in Shady Grove, precludes the Court from exercising supplemental jurisdiction over plaintiffs' NYLL claims (the "Second Argument"). Id. at 12–15.

## DISCUSSION

### A.  Motion for Relief

Under Rule 60(b), upon a motion, the court may relieve a party from an order for the following reasons:

---

n.6, ECF No. 68.  The Court finds that no such motion is required here.  First, defendants' change in position after obtaining new counsel does not undermine defendants' original consent to this request.  Second, courts have an "inherent power and discretion" to redefine a class.  In re Methyl Tertiary Butyl Ether Prods. Liability Litig., 241 F.R.D. 435, 438 (S.D.N.Y. 2007).  Accordingly, the class is redefined to include food service employees who have worked at Alle from December 3, 2002 through the present.  The revised notice should reflect this change.

     (1) mistake, inadvertence, surprise, or excusable neglect;

     (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

     (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

     (4) the judgment is void;

     (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

     (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Granting a Rule 60(b) motion affords the movant such "extraordinary judicial relief" that the court will invoke its discretion to grant the relief "only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).

     Defendants fail to identify the specific grounds under Rule 60(b) that support their motion for relief.  In fact, defendants do not provide any case law that addresses Rule 60(b) or supports granting such extraordinary relief in this case.

     Given the nature of defendants' arguments, the Court construes their First Argument as a motion for relief due to mistake under Rule 60(b)(1) and their Second Argument as a motion for relief due to a void judgment under Rule 60(b)(4).  See, e.g., Serrano v. Smith, No. 05–CV–1849, 2009 WL 1390868, at *1 (S.D.N.Y. May 13, 2009) (construing motion for relief under Rule 60(b)(1) where movant "essentially [sought] relief on the basis of an alleged mistake of law"); Williams v. Artus, No. 06–CV–356, 2008 WL 4516241, at *2 (W.D.N.Y. Oct. 2, 2008); Nemaizer, 793 F.2d at 64 (finding Rule 60(b)(4) only relevant subsection for motion for relief).

     The Court will also analyze the arguments as a motion for relief under Rule 60(b)(6) for any other reason that justifies relief.

### 1. *Rule 60(b)(1): Mistake*

The Second Circuit has consistently held that Rule 60(b)(1) is available for a district court to correct its own legal errors.  See In re 310 Assocs., 346 F.3d 31, 35 (2d Cir. 2003); Schildhaus v. Moe, 335 F.2d 529, 531 (2d Cir. 1964); Tarkington v. United States Lines Co., 222 F.2d 358, 360 (2d Cir. 1955).  "[M]ere disagreement" with a court's resolution of legal and factual issues does not amount to an "exceptional circumstance" that warrants Rule 60(b)(1) relief.  Williams, 2008 WL 4516241, at *2.

While Rule 60(c)(1) provides "a motion for Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order, courts in the Second Circuit require that motions for relief from such judicial mistakes pursuant to Rule 60(b)(1) must be made before the time for appeal expires."  Pasquino v. Lev Parkview Developers, LLC, No. 09–CV–4255, 2011 WL 4502205, at *3 (S.D.N.Y. Sept. 29, 2011) (emphasis in original) (internal quotation marks omitted) (quoting Chiulli v. Internal Revenue Serv., No. 03–CV–6670, 2006 WL 3008084, at *2 (S.D.N.Y. Oct. 20, 2006)); see also Int'l Controls Corp. v. Vesco, 556 F.2d 665, 670 (2d Cir. 1977) ("[A] motion for relief from such judicial mistakes under Rule 60(b)(1) may not be made after the time for appeal has elapsed, . . . at least if the mistake alleged is of a substantive legal nature.").

Here, defendants' motion for relief based on judicial mistake is untimely.  Defendants failed to appeal the Rule 23 Order under Rule 23(f), which permits an immediate appeal of a class certification order "if a petition for permission to appeal is filed with the circuit clerk within 14 days after the order is entered."  Fed. R. Civ. P. 23(f) (emphasis added).  As a result, defendants' motion for relief based on judicial mistake, which defendants first raised in a pre-motion conference letter twenty-nine days after the Rule 23 Order, is untimely because it was

filed after the time to appeal had expired.[2]  See, e.g., Massop v. United States Postal Serv., 493 F. App'x 231, 232 (2d Cir. 2012) (finding that if motion for relief were construed as one based on judicial mistake, motion would have been untimely because plaintiff was using motion as substitute for timely appeal).

Moreover, even if defendants' motion were timely, the Court is not persuaded that the application of Shady Grove's holding to the instant case was erroneous.

### i. Application of Shady Grove

Defendants argue that Shady Grove does not apply in this diversity case, citing cases including Holster v. Gatco, Inc., 618 F.3d 214 (2d Cir. 2010) and DiPonzio v. Bank of America Corp., No. 11–CV–6192, 2011 WL 2693912 (W.D.N.Y. July 11, 2011).  Defs.' Mem. at 11 (citing DiPonzio, 2011 WL 2693912, at *3).

### 1.  Shady Grove Applies In Supplemental Jurisdiction Cases

Both the plurality and concurrence in Shady Grove found that § 901(b) and Rule 23 conflict.  130 S. Ct. at 1444 (plurality); id. at 1456–57 (concurrence).  Additionally, both determined that the application of Rule 23 did not violate the Rules Enabling Act, though they reached this conclusion on different grounds.  See id. at 1444–45 (plurality); id. at 1451–55, 1457–60 (concurrence); Hanna v. Plumer, 380 U.S. 460 (1965).  As a result, according to Shady Grove: (1) § 901(b) and Rule 23 conflict; (2) Rule 23 does not violate the Rules Enabling Act;

---

[2] The Court is unaware of any case that has addressed this time restriction in the context of a motion for relief filed after the deadline for an immediate interlocutory appeal of a class certification under Rule 23(f).  However, the Court finds that the purpose behind this time restriction and the circumstances of this case warrant applying the restriction here.  The time restriction on Rule 60(b)(1) motions "has been imposed to prevent [these motions] from becoming a way to assert an otherwise time-barred appeal."  Pasquino, 2011 WL 4502205, at *3.  Here, defendants' motion challenges the legal findings of the Rule 23 Order just as it would have on a timely appeal.  Further, defendants seek certification to appeal the Rule 23 Order, which suggests that defendants agree that the issues they raise are appropriate for an appeal.  Defendants, in essence, are using this motion to assert an otherwise time-barred appeal under Rule 23(f), which is exactly what the time restriction aims to prevent.

and, therefore (3) Rule 23 preempts § 901(b) when class action plaintiffs seek statutory damages for state law claims in federal court.

Shady Grove answers the exact questions at issue here—whether § 901(b) and Rule 23 conflict and whether Rule 23 violates the Rules Enabling Act—and contains no language suggesting that its holding is strictly limited to diversity jurisdiction cases. See, e.g., Chenensky v. New York Life Ins. Co. ("Chenensky I"), No. 07–CV–11504, 2012 WL 234374, at *2 (S.D.N.Y. Jan. 10, 2012) (rejecting same argument by defendants and finding "[t]he Erie analysis driving Shady Grove applies to courts exercising supplemental jurisdiction as well as those exercising diversity jurisdiction").

Accordingly, post-Shady Grove, courts in this Circuit exercising supplemental jurisdiction have consistently allowed plaintiffs to amend their pleadings to seek liquidated damages under the NYLL that were previously barred by § 901(b). See, e.g., Gardner v. Western Beef Props., Inc., No. 07–CV–2345, 2011 WL 6140518, at *7 (E.D.N.Y. Sept. 26, 2011) (report and recommendation) (granting motion to amend to seek liquidated damages under NYLL in light of Shady Grove and defendant's consent), adopted by 2011 WL 6140512 (E.D.N.Y. Dec. 9, 2011); Gortat v. Capala Bros., Inc. ("Gortat I"), No. 07–CV–3629, 2011 WL 6945186, at *9–*10 (E.D.N.Y. Dec. 30, 2011) (granting motion to amend to seek NYLL liquidated damages in light of Shady Grove); Chenensky I, 2012 WL 234374, at *1–*2 (same); Coultrip v. Pfizer, Inc., No. 06–CV–9952, 2011 WL 1219365, at *4 (S.D.N.Y. Mar, 24, 2011) (same); Spicer v. Pier Sixty LLC, No. 08–CV–10240, 2011 WL 446144, at *2–3 (S.D.N.Y. Feb. 7, 2010) (same); Pefanis v. Westway Diner, Inc., No. 08–CV–002, 2010 WL 3564426, at *7 (S.D.N.Y. Sept. 7, 2010) (same); McBeth v. Gabrielli Truck Sales, Ltd., 731 F. Supp. 2d 316, 320–21 (E.D.N.Y. 2010) (same); see also Hamelin v. Faxton-St. Luke's Healthcare, 274 F.R.D.

385, 402 n.5 (N.D.N.Y. 2011) (noting that confusion will no longer arise from opt-outs because the "Supreme Court has held [§ 901(b)] does not apply to Rule 23 class actions and that liquidated damages available under New York law may be pursued in a federal class action").

Contrary to defendants' argument, therefore, Shady Grove applies in cases of supplemental jurisdiction.

### 2.   Holster Is Inapposite

Defendants cite Holster for their proposition that Shady Grove is "limited to state law claims brought in diversity."  Defs.' Mem. at 10 (citing Holster, 618 F.3d at 216).  Defendants also assert that the Second Circuit in Giovanniello v. ALM Media, LLC, 660 F.3d 587 (2d Cir. 2011) vacated on other grounds, 133 S. Ct. 159 (2012), and two other circuits, also recognized this limitation.  Defs.' Mem. at 10–11 (citing Giovanniello, 660 F.3d at 592 n.3; Landsman & Funk P.C. v. Skinder-Strauss Assocs., 640 F.3d 72, 92 (3d Cir. 2011), vacated and reinstated on other grounds, 2012 WL 2052685 (3d Cir. 2012); James Rivers Ins. Co. v. Rapid Funding LLC, 658 F.3d 1207, 1217–18 (10th Cir. 2011)).  Defendants further assert that in Holster, the Second Circuit further limited Shady Grove's application and held that "[Shady Grove] does not apply universally even when the district court possesses original subject matter jurisdiction based upon diversity of citizenship."  Defs.' Mem. at 11.

Defendants' reliance on Holster, Giovanniello, and Landsman & Funk is misguided given the unique nature of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which provides the cause of action in these cases.  The TCPA uniquely allows a plaintiff to recover statutory damages in state court for a defendant's transmission of unsolicited advertisements by means of a telephone facsimile machine "if otherwise permitted by the laws or rules of court" of the forum state.  Gottlieb v. Carnival Corp., 436 F.3d 335, 337 (2d Cir. 2006) (citing 47 U.S.C. §

9

227(b)(3)).  According to the Second Circuit, federal courts lack federal question jurisdiction but can have diversity jurisdiction over TCPA claims.  Id. at 343.

In Holster, the Second Circuit addressed the feasibility of a Rule 23 class action for a TCPA claim.  618 F.3d at 215–16.  In its original summary order in Holster, the Circuit held that § 901(b) applied to the TCPA, barring a class action seeking statutory damages in federal court, for two independent reasons: (1) Congress directed courts to apply the TCPA as state law and, thus, the Erie doctrine required federal courts to apply § 901(b) ("first reason"); and (2) the "if otherwise permitted . . ." language of the TCPA constitutes an express limitation that a plaintiff cannot bring a TCPA claim if state law does not permit such a claim ("second reason").  Holster, 618 F.3d at 216 (citing Bonime v. Avaya, Inc., 547 F.3d 497, 501–02 (2d Cir. 2008)).

On remand from the Supreme Court, the Second Circuit held, in light of Shady Grove, that because Rule 23 generally preempts § 901(b), Shady Grove abrogated the Circuit's holding to the extent the Circuit based its holding on its first reason for dismissal.[3]  Id. at 217. Importantly, in making this determination, the Second Circuit explicitly agreed with the appellant's description of Shady Grove's holding: "[I]f the requirements of Rule 23 are met and if federal jurisdiction otherwise exists, [§ 901(b)'s] bar of New York class-action suits seeking statutory damages is irrelevant."  Id. (emphasis added).

The additional cases defendants cite do not provide any convincing support for defendants' position.  In Giovanniello, the Second Circuit decided, inter alia, whether the "if

---

[3] Ultimately, however, the Second Circuit dismissed the class action on remand, finding Shady Grove did not abrogate the Circuit's holding to the extent the Circuit based its holding on their second reason for dismissal. Holster, 618 F.3d at 217.  The Circuit explained that its second reason for dismissal involved a question of statutory interpretation and did not raise a question implicating the relationship between the federal rules and state law.  Id. The Circuit read the "if otherwise permitted . . ." language as Congress's delegation of considerable power to the states to determine whether a cause of action lies under the TCPA.  Id. at 217–18; see 47 U.S.C. § 227(b)(3). Accordingly, the Circuit dismissed the class action because of the unique language in the TCPA, which required state law (specifically § 901(b)) to define when a cause of action can lie in federal court.  Id. at 217–18.

otherwise permitted . . ." language of the TCPA included prohibiting a TCPA claim in federal court based on New York's statute of limitations.  660 F.3d at 591–92.  The Second Circuit's only discussion of <u>Shady Grove</u> was in a footnote, where the Circuit explained that <u>Shady Grove</u>'s holding abrogated the first reason for dismissal in <u>Holster</u>.  <u>Id.</u> at 592 n.3.  Although the Circuit notes that <u>Holster</u> was a federal diversity action, the Circuit does not, at any point, discuss the Court's jurisdictional posture in <u>Shady Grove</u>.  <u>Id.</u>

In <u>Landsman & Funk</u>, the Third Circuit, sitting in diversity jurisdiction, held that the TCPA was federal law and therefore Rule 23, and not § 901(b), applied.  640 F.3d at 91–92. Alternatively, the court noted that "even if the fact that the TCPA is a federal statute were not determinative, under [<u>Shady Grove</u>], federal law regarding class actions would be applied in federal courts, not state law."  <u>Id.</u> at 91.  In touching on <u>Shady Grove</u>, the Third Circuit noted that "the Supreme Court held that § 901(b) 'cannot apply in diversity suits' in federal court."  <u>Id.</u> at 91 n.27.  Again, the Court is not persuaded that the application of <u>Shady Grove</u> under these circumstances means the Third Circuit has recognized <u>Shady Grove</u> as limited to cases based on diversity jurisdiction.

In <u>James Rivers Insurance Co.</u>, the Tenth Circuit used <u>Shady Grove</u>'s analysis of the Rules Enabling Act to assist in determining whether Federal Rule of Evidence 701 or the Colorado common law rule of evidence governed the admissibility of a witness's testimony.  658 F.3d at 1216–18.  The Tenth Circuit, sitting in diversity jurisdiction, noted that <u>Shady Grove</u> was "the most recent Supreme Court case interpreting how to apply rules adopted under the Rules Enabling Act in a diversity case," <u>id.</u> at 1218, but it did not expressly find that <u>Shady Grove</u>'s holding was limited to diversity jurisdiction cases.  Furthermore, <u>James Rivers Insurance Co.</u> does not implicate the relationship between § 901(b) and Rule 23.

11

### 3.   DiPonzio Is Distinguishable

In <u>DiPonzio</u>, plaintiffs filed a class action in New York State court alleging violations of the NYLL and seeking liquidated damages.  2011 WL 2693912, at *1, *3.  Defendants removed the action to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332.  <u>Id.</u> at *1.

The court held that "because this case was filed in state court, it takes a different course than <u>Shady Grove</u>."  <u>Id.</u> at *5.  The court explained that because "[t]he amount in controversy is determined with respect to the time of removal," the calculation depends on state law.  <u>Id.</u> Accordingly, "[b]ecause New York law prohibits recovery of liquidated damages in class action suits, no liquidated damages were in consideration <u>at the time of removal</u>."  <u>Id.</u> (emphasis added).  The court granted plaintiffs' motion to remand, finding that the defendants failed to satisfy their burden to show to a reasonable certainty that the amount in controversy exceeded five million dollars.  <u>Id.</u> at *2.

Contrary to defendants' contention, the <u>DiPonzio</u> court does not appear to have broadly held that <u>Shady Grove</u> did not apply, because the state law claims came to federal court other than through original diversity jurisdiction.  Rather, the <u>DiPonzio</u> court specifically found that <u>Shady Grove</u> did not apply because the case originated in state court and, therefore, the court had to respect § 901(b) in calculating the amount in controversy.  The instant case, which was filed in federal court, does not follow the same path as <u>DiPonzio</u>.  Accordingly, <u>DiPonzio</u>, which in any case does not bind this Court, is inapposite here.

In sum, defendants fail to argue persuasively that <u>Shady Grove</u>'s holding does not apply in cases of supplemental jurisdiction.  Accordingly, the Court finds that application of <u>Shady Grove</u> to the instant case was not a mistake.  Defendants' motion for relief under Rule 60(b)(1) is, therefore, denied.

12

### 2. *Rule 60(b)(4): Void Judgment*

Rule 60(b)(4) authorizes relief from a "void" judgment, such as when the court rendering the judgment lacked subject matter jurisdiction, rendered the judgment in a manner inconsistent with due process requirements, or acted beyond its lawful powers. Fed. R. Civ. P. 60(b)(4); <u>see</u> <u>L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.</u>, No. 00–CV–7394, 2013 WL 3863892, at *5 (E.D.N.Y. July 25, 2013).

Generally, courts considering a Rule 60(b)(4) motion will find a judgment void because of a jurisdictional defect only in the exceptional case where the court "plainly usurp[ed] jurisdiction." <u>Nemaizer</u>, 793 F.2d at 65. A court has plainly usurped jurisdiction only when there was a "total want of jurisdiction," <u>id.</u>, and the court "lacked even an 'arguable basis' for jurisdiction," <u>United Student Aid Funds, Inc. v. Espinosa</u>, 559 U.S. 260, 271 (2010) (quoting <u>Nemaizer</u>, 793 F.2d at 65).

Given the discretionary nature of supplemental jurisdiction, the Court has a valid basis for exercising jurisdiction in the instant case and, therefore, the Rule 23 Order is not void.

#### i. *Supplemental Jurisdiction*

Federal district courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). For the purposes of § 1367(a), claims form part of the same case or controversy if they "derive from a common nucleus of operative fact." <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 725 (1966).

As the Supreme Court stated in discussing § 1367's predecessor judicial doctrine of pendent jurisdiction, this "is a doctrine of discretion." <u>Id.</u> at 726. "Subsection (c) of § 1367

confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (internal quotation marks omitted).

Under § 1367(c), a district court "may decline to exercise supplemental jurisdiction" if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c) (emphasis added).

"[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). This doctrine's purpose is to allow courts to deal with supplemental state law claims "in the manner that most sensibly accommodates a range of concerns and values." Id.

Here, plaintiffs' NYLL claims and FLSA claim arise out of the same compensation practices and policies of Alle and, therefore, derive from a common nucleus of operative facts. See, e.g., Shahriar v. Smith & Wollensky Rest. Group, Inc., 659 F.3d 234, 245 (2d Cir. 2011) (finding NYLL and FLSA actions "clearly derive" from common nucleus of fact where they arose out of "same compensation policies and practices of [defendant]"); see also Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 162–63 (E.D.N.Y. 2008) ("[I]n an overtime case brought under both the NYLL and the FLSA, the factual overlap between the federal claims and the state claims is virtually total."). Defendants do not argue that the federal and state law claims fail to satisfy § 1367(a).

14

Given the Court can exercise supplemental jurisdiction under § 1367(a), the critical inquiry is whether any of the subsections of § 1367(c) applies. For the reasons set forth below, I find that none of the relevant subsections applies here.

1. Section 1367(c)(2)

Section 1367(c)(2) "requires that a state law claim substantially predominate over a federal claim before a district court has discretion to refuse supplemental jurisdiction." Shahriar, 659 F.3d at 246. "Predomination under section 1367 generally goes to the type of claim, not the number of parties involved." Id.

Defendants argue that given the disparity in the number of opt-in plaintiffs in the FLSA collective action (forty-five remaining) and the number potential plaintiffs in the Rule 23 class ("no fewer than 2,000"), and the fact that "the vast majority of the putative Rule 23 class members do not have timely FLSA claims," the NYLL claims predominate over the FLSA claim "by any measure—parties, claims, damages." Defs.' Reply at 6–7.

Although the number of NYLL plaintiffs, and the NYLL damages they seek, may be greater than for the FLSA claim, the NYLL claims do not predominate because they are of a similar, if not the same, type as the FLSA claim. See, e.g., Shahrair, 659 F.3d at 246 ("[T]he fact that there are more class members in the class action than those in the FLSA collective action should not lead a court to the conclusion that a state law claim substantially predominates over the FLSA action."); Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761–62 (9th Cir. 2010) (finding state law claims did not predominate over FLSA claims even where number of claimants and amount of damages in state law claim may have been higher), reversed in part and vacated in part on other grounds by 709 F.3d 829 (9th Cir. 2013). The factual overlap between the NYLL claims and the FLSA claim is extensive. Resolving the question of defendants'

liability on plaintiffs' FLSA overtime claim will resolve the question of liability on the NYLL overtime claim and require much of the same evidence that resolving the additional NYLL claims requires.  See, e.g., Shahriar, 659 F.3d at 246 (finding four NYLL claims did not predominate over two FLSA claims where "determination as to the FLSA claims may decide the Plaintiffs' NYLL claim as well"); Guzman v. VLM, Inc., No. 07–CV–1126, 2008 WL 597186, at *9 (E.D.N.Y. Mar. 2, 2008) (exercising supplemental jurisdiction despite "numerous state law claims and only a handful of federal claims" where factual overlap between claims was "virtually total"); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 197 (S.D.N.Y. 2011) (finding that even if some state claims require discovery beyond what is required by federal claims, court could not conclude that state claims substantially predominate).

Accordingly, the NYLL claims do not substantially predominate over the FLSA claim.

### 2. Section 1367(c)(3)

When a district court has "dismissed all claims over which it has original jurisdiction," the court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3).  In such a case, "the balance of factors will usually point toward declination." Lundy v. Catholic Health System of Long Island Inc., 711 F.3d 106, 118 (2d Cir. 2013).

Because the Court has not dismissed the FLSA claim, subsection 1367(c)(3) is inapplicable.

### 3. Section 1367(c)(4)

Under § 1367(c)(4), the court may decline to exercise jurisdiction "in exceptional circumstances, [w]here there are compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c)(4).  According to the Second Circuit, declining jurisdiction outside of the ambit of subsections 1367(c)(1) through (3) "appears as the exception rather than the rule" and is

appropriate "only if the circumstances are quite unusual." Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 448 (2d Cir. 1998).

Courts have consistently found that exercising supplemental jurisdiction over state labor law claims is appropriate in an action where the court has federal question jurisdiction over FLSA claims in a collective action. See, e.g., Shahriar, 659 F.3d at 248; Ervin v. OS Rest. Servs., Inc., 632 F.3d 971, 973–74 (7th Cir. 2011); Wang, 623 F.3d at 761–62; Lindsay v. Gov't Emps. Ins. Co., 448 F.3d 416, 424–25 (D.C. Cir. 2006); Whitehorn, 275 F.R.D. at 198; Hamelin, 274 F.R.D. at 401–402; Ansoumana, 201 F.R.D. at 89–96; Iglesias-Mendoza v. LaBelle Farm, Inc., 239 F.R.D. 363, 374–75 (S.D.N.Y. 2007); but see DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 309–12 (finding district court should not have exercised supplemental jurisdiction over state law claims that raised complex question of state law).

The circumstances of the instant case are similar to those in the aforementioned cases. Moreover, concerns of judicial economy, convenience, fairness, and comity, as set forth below, do not weigh in favor of declining to exercise jurisdiction.

### a. Judicial Economy

When evaluating judicial economy, "[c]ourts consider their familiarity with the facts, the timing of the case, the number of parties and claims, the amount of discovery, and whether there is ongoing parallel litigation." Chenensky II, 2013 WL 1180384, at *2 (citing Allard v. Arthur Andersen & Co., 957 F. Supp. 409, 425 (S.D.N.Y. 1997)).

Defendants argue that exercising supplemental jurisdiction would not serve judicial economy for the sole reason that ninety-six percent of the potential NYLL class members "reserved to themselves the right to pursue FLSA claims separately from Plaintiffs." Defs.' Mem. at 13. Plaintiffs, however, contend that judicial economy favors exercising supplemental

jurisdiction because (1) the federal and state claims arise from the same set of facts, will trigger the same legal issues, and will involve the same witnesses and documentary evidence; (2) this case has been ongoing since December 3, 2008; and (3) the Court is "intimately familiar with the facts." Pls.' Opp'n at 12.  Plaintiffs further contend that "the interests of judicial economy would clearly be compromised if two such duplicative actions were separately litigated." Id.

The Court agrees with plaintiffs' reasoning and finds that judicial economy considerations weigh heavily in favor of exercising supplemental jurisdiction over plaintiffs' NYLL claims.

### b.  Convenience

Similar to the concern of judicial economy, the factor of convenience "ask[s] whether the case is easily resolvable, and, if it is, whether it is more appropriate to resolve the case than decline to exercise jurisdiction."   Chenensky II, 2013 WL 1180384, at *2 (citing Cement & Concrete Workers Dist. Council Welfare Fund v. Anthony Frascone, 68 F. Supp. 2d 166, 174 (E.D.N.Y. 1999)).

The NYLL claims themselves do not appear to be substantially more complicated than the FLSA claim.  As previously discussed, the claims overlap in facts, discovery, and legal issues.  As a result, it is more appropriate to resolve the NYLL claims here, alongside the FLSA claim, rather than in state court.

Accordingly, the Court finds the consideration of convenience also weighs in favor of exercising supplemental jurisdiction over plaintiffs' NYLL claims.

c.   Fairness

"Fairness involves questions of equity[,]" which include whether declining jurisdiction will prejudice the parties and whether the parties are responsible for any such prejudice. Chenensky II, 2013 WL 1180384, at *2 (citing Pitchell v. Callan, 13 F.3d 545, 549 (2d Cir. 1994)).

Defendants, relying on Chenensky II, argue that fairness considerations militate against exercising supplemental jurisdiction because plaintiffs will reap double damages in federal court.[4] Defs.' Mem. at 14–15 (citing Chenensky II, 2013 WL 1180384, at *5). In that case, the federal court ultimately declined to exercise supplemental jurisdiction over NYLL claims because (1) it had dismissed the related FLSA claim and (2) a companion case with nearly identical issues was pending in state court. 2013 WL 1180384, at *4–*5.

The instant case is certainly distinguishable from Chenensky II. The Court has not dismissed the FLSA claim, which provides the Court with a basis for federal jurisdiction. There is no companion case with nearly identical issues pending in state court. Additionally, the considerations of judicial economy and convenience weigh in favor of exercising supplemental jurisdiction here.

Further, many of the proposed Rule 23 class members possess relatively small claims, are currently employed by Alle, and/or are of foreign descent. See Rule 23 Order at 25–26. As a result, the concern of fairness supports, to a certain extent, the Court's exercise of supplemental jurisdiction because the fear of reprisal and a lack of familiarity with the American legal system

---

[4] Although defendants contend that plaintiffs will "reap double damages," it is likely that plaintiffs would only be entitled to receive liquidated damages equal to twenty-five percent of the unpaid wages for the period prior to April 9, 2011. See Vinas Pullini Subsurface Contractors, Inc., No. 11–CV–2765, 2012 WL 6641662, at *5 n.5 (E.D.N.Y. Oct. 5, 2012) (noting that district courts have found that NYLL § 663's April 9, 2011 amendment to allow for one-hundred percent liquidated damages does not apply retroactively), adopted by 2012 WL 6633929 (E.D.N.Y. Dec. 20, 2012); Maldonado v. La Nueva Rampa, Inc., No. 10–CV–8195, 2012 WL 1669341, at *9 n.19 (S.D.N.Y. May 14, 2012) (collecting cases). Regardless, the analysis of fairness remains the same.

may have prevented them from opting in to the FLSA collective action.  See, e.g. Hamelin, 274 F.R.D. at 401 (finding "fairness weighs in favor of exercising supplemental jurisdiction when taking into account the possible fear of reprisal and other reasons why an employee may not opt-in to a FLSA collective action").

However, the Court finds that, given plaintiffs' potential for greater damages in federal court, fairness does not favor exercising supplemental jurisdiction and, instead, weighs slightly against exercising supplemental jurisdiction.

### d.  Comity

Comity "reflects a proper respect for state functions, [and recognizes] a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in separate ways."  Levin v. Commerce Energy, Inc., 130 S. Ct. 2323, 2330 (2010) (internal quotation marks omitted).  In assessing comity, courts should "take[] into account such factors as the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims."  Chenensky II, 2013 WL 1180384, at *2 (internal quotation marks omitted).

Comity is typically implicated when the state law claims raise novel or complex issues of state law that are better left for state courts to decide.  See, e.g., Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998) ("Where a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decisions by the state courts."); Brooklyn Heights Ass'n v. Nat'l Park, 818 F. Supp. 2d 564, 572 (E.D.N.Y. 2011) ("Concerns of comity, it should be underscored, are particularly important here, where the state law claim involves potentially difficult and novel questions of New York law

. . . ."); <u>Metropolitan Taxicab Bd. of Trade v. City of New York</u>, No. 08–CV–7837, 2009 WL 2222582, at *2 (S.D.N.Y. July 23, 2009) (declining to exercise supplemental jurisdiction over claims that raised complex issues regarding scope of authority and procedural standards of state municipal agency).

Defendants argue that given the conflict between § 901(b) and Rule 23, "the principle of comity demands this Court not to interfere <u>volitionally</u> with the determination of the New York legislature that NYLL claims, providing as they do for liquidated damages, may not proceed as class actions." Defs.' Mem. at 15 (emphasis in original). Also relying on <u>Kaufman v. Kaye</u>, 466 F.3d 83 (2d Cir. 2006), defendants argue that if the court exercises supplemental jurisdiction "<u>knowing</u> that doing so will eclipse New York procedure, it will be the functional equivalent of having intervened in the internal procedures of New York State courts." Defs.' Reply at 8 (emphasis in original). Plaintiffs, in response, point to the numerous cases in this Circuit, discussed <u>supra</u>, where courts exercising supplemental jurisdiction have allowed NYLL plaintiffs to seek liquidated damages, according to <u>Shady Grove</u>. Pls.' Opp'n. at 14 (collecting cases).

Plaintiffs' NYLL claims do not raise novel or complex issues of state law. <u>See, e.g.</u>, <u>Hamelin</u>, 274 F.R.D. at 401 ("[C]omity is no hurdle to supplemental jurisdiction as NYLL largely parallels the FLSA . . . ."); <u>Okolie v. Paikoff</u>, 589 F. Supp. 2d 204, 221 (E.D.N.Y. 2008) ("[P]laintiff's standard-issue state law claims involve no novel questions of state law and thus do not raise concerns over comity."). Moreover, exercising supplemental jurisdiction over plaintiffs' NYLL claims and allowing claims for liquidated damages, in contravention of § 901(b), will not prevent New York State courts from "perform[ing] their separate functions in separate ways." <u>Levin</u>, 130 S. Ct. at 2330 (2010). The Court acknowledged in <u>Shady Grove</u> that "divergence from state law, with the attendant consequence of forum-shopping, is the inevitable

(indeed one might say intended) result of a uniform system of federal procedure.  Congress itself has created the possibility that the same case may follow a different course if filed in federal rather than state court."  130 S. Ct. 1448 (plurality).  Accordingly, the Court is not convinced that the potential for greater damages in federal court triggers an issue of comity.

Further, defendants' reliance on Kaufman is misplaced.  In Kaufman, the plaintiff sought, inter alia, (1) a declaration that the system for assigning cases to judges in the Second Department of New York's Appellate Division violated the Fourteenth Amendment and (2) an injunction requiring the state legislature to establish a new system for assigning appeals.  466 F.3d at 85.  The court abstained from considering plaintiff's claims, finding "the relief sought by [plaintiff] would be [too] intrusive in the administration of the New York court system."  Id. at 86.  In making this determination, the court cited the principle of comity and observed that under such principle, "a federal district court has no power to intervene in the internal procedures of the state courts."  Id.

Here, plaintiffs seek relief that does not intrude on the procedures of the New York State legislature or courts.  Exercising supplemental jurisdiction over plaintiffs' NYLL claims and allowing liquidated damages in plaintiffs' class action will not affect how the state courts use and apply § 901(b).  Cf. Bracci v. Becker, No. 11–CV–1473, 2013 WL 123810, at *12–*14 (N.D.N.Y. Jan. 9, 2013) (abstaining when relief sought, which included precluding New York State judge from certain cases, was intrusive and unmanageable); Anthony v. Council, 316 F.3d 412, 421 (3d Cir. 2003) (abstaining when federal relief would disrupt New Jersey court system and lead to federal monitoring); Pompey v. Broward Cnty., 95 F.3d 1543, 1548–49 (11th Cir. 1996) (observing that federal court rulings that ordered interventions in state courts presented

unseemly encroachment on federalism and comity).  As a result, the principle of comity does not support defendants' argument.

The Court finds that comity considerations weigh neither in favor of nor against exercising supplemental jurisdiction over plaintiffs' NYLL claims.

Overall, judicial economy and convenience considerations weigh in favor of exercising supplemental jurisdiction, fairness considerations weigh slightly against exercising supplemental jurisdiction, and comity weighs in neither direction.  Further, this cases does not present sufficiently compelling or unusual circumstances to warrant declining jurisdiction.  Accordingly, the Court has, at the very least, an arguable basis for exercising supplemental jurisdiction over plaintiffs' NYLL claims.  Therefore, the Rule 23 Order was not void.

Defendants' motion for relief based on Rule 60(b)(4) is denied.

### 3. *Rule 60(b)(6): Any Other Reason Justifying Relief*

Relief under Rule 60(b)(6) is "properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds of relief are not recognized in clauses (1)–(5) of the Rule." Nemaizer, 793 F.2d at 63 (citations omitted).  Rule 60(b)(6) "is a grand reservoir of equitable power to do justice in a particular case, but that reservoir is not bottomless."  Manney v. Intergroove Tontrager Vertriebs GMBH, No. 10–CV–4493, 2012 WL 4483092, at *5 (E.D.N.Y. Sept. 28, 2012) (internal quotation marks omitted).

Given defendants' arguments constitute grounds for relief recognized in Rule 60(b)(1) and (4), the Court finds that relief under Rule 60(b)(6) is not applicable here.  However, even if defendants' asserted grounds for relief did not fall within clauses (1) through (5) of the Rule, the circumstances here do not justify relief under Rule 60(b)(6).

As outlined supra, numerous courts in this Circuit, while exercising supplemental jurisdiction over NYLL claims, have applied Shady Grove to allow plaintiffs to seek liquidated damages in a class action.  In each of these cases, defendants were faced with the same hardship as defendants here—liquidated damages if plaintiffs prevail.  Accordingly, the circumstances of this case are not "extraordinary," and the Rule 23 Order does "not work an extreme and undue hardship" different from the hardship courts have previously imposed on similar defendants.

Accordingly, defendants' motion for relief under Rule 60(b)(6) is denied.

## B.  Motion To Decertify Rule 23 Class

Under Rule 23(c)(1)(C), "an order that grants or denies class certification may be altered or amended before final judgment."  Fed. R. Civ. P. 23(c)(1)(C).  "A district court may decertify a class if it appears that the requirements of Rule 23 are not in fact met."  Gortat v. Capala Bros., Inc. ("Gortat II"), No. 07–CV–3629, 2012 WL 1116495, at *2 (E.D.N.Y. Apr. 3, 2012) (citing Sirota v. Solitron Devices, Inc., 673 F.2d 566, 572 (2d Cir. 1982)).  However, "the Court may not disturb its prior certification findings absent some significant intervening event, or showing of compelling reasons to reexamine the question." Id. (quoting Jermyn v. Best Buy Stores, L.P., 276 F.R.D. 167, 169 (S.D.N.Y. 2011)).

Defendants do not present any arguments that that the requirements of Rule 23 are not met here.  In fact, defendants note that they "take[] no issue with any part of the Court's 'rigorous analysis' of the Rule 23(a) requirements."  Defs.' Reply at 6 n.5.  Defendants have not pointed to any "significant intervening event" nor made a showing of compelling reasons.  Defendants' arguments regarding Shady Grove and supplemental jurisdiction do not address the merits of class certification under Rule 23 and, therefore, do not require the Court to "disturb" its prior certification findings.

Accordingly, defendants' motion to decertify the Rule 23 class is denied.

## C. Motion For Certification To Appeal

"It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996). Section 1292(b), which "allows permissive appeals of non-final orders upon consent of both the district court and the court of appeals," is an exception to this basic tenet. City of New York v. Milhelm Attea & Bros., Inc., No. 06–CV–3620, 2012 WL 4959502, at *3 (E.D.N.Y. Oct. 17, 2012); see also 28 U.S.C. § 1292(b).

Pursuant to § 1292(b), a district court may certify a non-final order for interlocutory appeal where "(1) the order involves a controlling question of law; (2) there is a substantial ground of difference of opinion on this question of law; and (3) immediate appeal form the order may materially advance the ultimate termination of the litigation." Milhelm Attea & Bros., Inc., 2012 WL 4959502, at *3 (citing 28 U.S.C. § 1292(b)). A "district court must carefully assess whether each of the three conditions for certification is met." Primavera Familienstifung v. Askin, 139 F. Supp. 2d 567, 569 (S.D.N.Y. 2001).

However, the Second Circuit has repeatedly held that the use of this procedure "should be strictly limited because only exceptional circumstances [will] justify a departure from the basic policy." In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (citing Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir. 1990)) (alteration in original) (internal quotation marks omitted); see also Koehler, 101 F.3d at 865 (finding section 1292(b) "a rare exception to the final judgment rule that generally prohibits piecemeal appeals"). Furthermore, § 1292(b) certification "is so exceptional that, even when a district court concludes that the three factors in § 1292(b) are met, it nevertheless retains 'unfettered discretion' to deny leave to appeal." Milhelm Attea & Bros.,

2012 WL 4959502, at *3; see also Nat'l Asbestos Workers Med. Fund v. Phillip Morris, Inc., 71

F. Supp. 2d 139, 162 (E.D.N.Y. 1999); In re Vitamin C Antitrust Litig., No. 06–MD–1738, 2012

WL 425234, at *1 (E.D.N.Y. Feb. 9, 2012).

>                    i.   *Controlling Question of Law*

With respect to the first requirement, a controlling question of law exists "if reversal of

the order could result in the dismissal of the action or could 'significantly affect the conduct of

the action.'"   Milhelm Attea & Bros., 2012 WL 4959502, at *4 (quoting S.E.C. v. Credit

Bancorp, Ltd., 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000)).   Other considerations include

whether "the certified issue would have precedential value for a large number of cases,"

Primavera Familienstifung, 139 F. Supp. 2d at 570, or whether "the case is of unusual

significance, one in which a ruling is of practical importance going well-beyond run-of-the-mill

concerns of the parties before the Court." In re Bisys Sec. Litig., No. 04–CV–3840, 2005 WL

3078482, at *1 (S.D.N.Y. Nov. 16, 2005) (internal quotation marks omitted).   Additionally, the

question of law must refer to a "pure" question of law, which allows the reviewing court to

decide the question "quickly and cleanly without having to study the record."   Ramos v.

SimplexGrinnell LP, No. 07–CV–981, 2011 WL 3472341, at * 1 (E.D.N.Y. Aug. 8, 2011).

Although defendants maintain that "the issue is a controlling question of law in that it

will have precedential value for a large number of cases," Defs.' Mem. at 17, they neither specify

which question of law will produce precedential value nor explain how an appeal would be of

value in other cases.

An appeal concerning the First Argument would provide minimal precedential value, as

numerous courts have allowed liquidated damages in similar circumstances.   And an appeal

concerning the Second Argument would not likely benefit subsequent cases, given the

discretionary and fact-specific nature of supplemental jurisdiction.  See Dep't of Econ. Dev. v. Arthur Andersen & Co., 683 F. Supp. 1463, 1487 (S.D.N.Y. 1988) (finding interlocutory decision unlikely to assist in early disposition of wide spectrum of cases where issue was heavily fact-dependent).

Further, although the FLSA collective action contains considerably fewer plaintiffs than the NYLL class action, and thus the scope of the litigation would decrease if the Court presided over only the FLSA claim, the absence of the NYLL plaintiffs would not "significantly" affect the conduct of the litigation.  Litigation on the FLSA claim, which factually overlaps with the NYLL claims, will continue.  Green v. City of New York, No. 05–CV–429, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006) (finding proposed questions of law not controlling because reversal would only terminate action with respect to one subclass in litigation).

Accordingly, I find that the First and Second Arguments present no controlling questions of law.

### ii. Substantial Ground for Difference of Opinion

Under § 1292(b), a substantial ground for difference of opinion requires "substantial doubt that the district court's order was correct."  SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06–CV–15375, 2007 WL 1119753, at * 2 (S.D.N.Y. Apr. 12, 2007) (internal quotation marks omitted).  "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." Flor, 79 F.3d at 284.  The existence of a substantial ground for dispute "depends on the strength of the arguments in opposition to the challenged ruling."  Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, No. 11–MC–285, 2011 WL 6057927, at *5 (S.D.N.Y. Dec. 6, 2011) (citing Flor, 79 F.3d at 284)).  Further, the simple argument that the district court made the

wrong decision, without more, is not a substantial ground for difference of opinion.  Milhelm
Attea & Bros., 2012 WL 4959502, at *4.

  With regard to the First Argument, defendants maintain that the applicability of Shady
Grove has "yield[ed] conflicting authority among federal district courts."  Defs.' Mem. at 17.
However, as explained supra, the case law defendants cite is inapposite and does not persuade
the Court that Shady Grove applies only in diversity cases.  As a result, defendants fail to make
any argument that raises "substantial doubt" that the Rule 23 Order applying Shady Grove was
correct.

  As to the Second Argument, defendants argue that this is a question of "first impression"
because "[n]o other court . . . appears to have addressed the issue whether the Cohill factors
prevent Shady Grove from overriding CPLR § 901(b) where a federal district court exercises
only supplemental jurisdiction."  Defs.' Mem. at 17.  The Court agrees that no other court
appears to have explicitly addressed the conflict between § 901(b) and Rule 23 in deciding
whether to exercise supplemental jurisdiction.  However, deeming this question one of first
impression ignores that courts regularly decide whether to exercise supplemental jurisdiction
over state law claims.  Defendants' arguments merely challenge the Court's discretion in
exercising supplemental jurisdiction and, as such, do not demonstrate a substantial ground for
difference of opinion.  See, e.g., Mount Sinai Hosp. v. Arana, Nos. 11–CV–5360, 11–CV–6194,
2012 WL 3307357, at *5 (E.D.N.Y. Aug. 12, 2012) (finding argument that judge applied proper
legal standard incorrectly only challenged the resolution of facts and judge's equitable powers
and, therefore, did not rise to difference of opinion on controlling question of law).

  Accordingly, I find no substantial ground for difference of opinion.

### iii.  Materially Advance the Ultimate Termination

"An immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or to shorten the time required for trial." SPL Shipping, 2007 WL 1119753, at * 3 (internal quotation marks omitted).

Defendants argue that reversing the Rule 23 Order would make the FLSA claim "demonstrably easier either to litigate or settle."  Defs.' Mem. at 18.  Defendants do not cite any case law in support of this argument.

If the Rule 23 Order is reversed, litigation on the remaining FLSA claim will continue. Given the sheer number of potential NYLL class members and the larger scope of the NYLL claims, eliminating the NYLL class would undoubtedly reduce the time required for litigating the FLSA claim.  However, as discussed supra, plaintiffs' NYLL claims and FLSA claim are closely related; the claims overlap in facts, legal issues, witnesses, and documentary evidence.  As a result, even if the NYLL class action were eliminated, there is little basis to believe that the trial of the FLSA claim would conclude with any significant saving of time.  See, e.g., Isra Fruit Ltd. v. Agrexco Agr. Export Co., 804 F.2d 24, 25–26 (2d Cir. 1986) (holding immediate appeal of denial of motion to dismiss Anti-Dumping Act claims unlikely to advance termination of lawsuit where claims are closely related to remaining Sherman Act and Robinson-Patman Act claims and discovery on all claims will likely overlap).

Additionally, the Second Circuit could affirm the Rule 23 Order, in which case the ultimate termination of this lawsuit would likely be materially delayed.  This potential delay is part of what the final judgment rule seeks to prevent.  See Mayers v. New York Cmty. Bancorp, Inc., No. 03–CV–5837, 2006 WL 2013734, at *11 (E.D.N.Y. July 18, 2006) ("The final

judgment rule protects the judicial process and its participants from delay which can prove advantageous to a well-financed litigant, and fatal to the less well-endowed.").

Furthermore, prior to the Rule 23 Order, the parties had engaged in settlement negotiations and reached a settlement that ultimately was unsuccessful.  Although thirty-three of the opt-in FLSA plaintiffs have more recently settled with defendants, the Court is not convinced that the absence of the NYLL claims will result in the "prompt speedy resolution" of the remaining FLSA plaintiffs' claims as defendants suggest.  Defs.' Mem. at 17.

Accordingly, the Court finds that an immediate appeal of the Rule 23 Order will not materially advance the ultimate termination of this litigation.

Defendants' motion to amend the Rule 23 Order to allow for an appeal, pursuant to 28 U.S.C. § 1292(b), is, therefore, denied.

## CONCLUSION

For the foregoing reasons, defendants' motion is denied in its entirety.  The parties are directed to file via ECF the revised notice, as previously discussed, within fourteen days of this Order.

SO ORDERED.

Dated: October 22, 2013
Brooklyn, New York

/s/

JOAN M. AZRACK
UNITED STATES MAGISTRATE JUDGE